## THE BEAR CREEK LUMBER COMPANY, HARRY E. CLARK, JOHN McCULLOUGH AND WALTER S. TAYLOR *vs.* SECOND NATIONAL BANK OF CUMBERLAND.

*Promissory notes*: consideration; signature; presumed that of party for value.  *Corporations*: purchase of own stock; stock all owned by one person; creditors' rights.

Under section 43 of Article 13 of the Code (1912), a promissory note is intended *prima facie* to be for a valuable consideration, and any person whose signature appears thereon is presumed to have become a party thereto for value.     p. 568

In the absence of express authority, a corporation can not purchase its own stock, and one lending a corporation money with which to buy its own stock (knowing that it was to be for such a use) can not recover from the corporation to the prejudice of its creditors.                    p. 569

When one person is the owner of all the stock of a corporation, a Court of Equity will go behind the mere form, when necessary to prevent fraud or injustice, and will not permit an individual to hold property and contract debts in the name of a corporation, of whose stock he is the sole owner, and then use the corporate property for the payment of such of his individual debts as he chooses to pay, leaving the corporation's existing creditors unprovided for.                    p. 571

*Decided April 11th, 1913.*

Appeal from the Circuit Court for Garrett County (In Equity), (BOYD, C. J.).

The facts are stated in the opinion of the Court.

The cause was argued before BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*D. Lindley Sloan* and *Edward H. Sincell,* for the appellants.

*Tasker G. Lowndes* and *Ferdinand Williams,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This case was argued and submitted to this Court on the 25th day of October, 1912, but before a decision was reached on the merits, an agreement of counsel was filed on the 11th day of December, 1912, to enter "the case settled." Upon this agreement the clerk was directed to make the usual entry in accordance therewith on the docket of the Court, and it was so entered.

Subsequently on the 28th of February, 1913, a petition and motion was filed by the appellee to strike out the entry of "settled," entered in the case, for reasons stated in the petition and by agreement of counsel filed herein, the motion was submitted for the action of the Court.

This motion was considered and granted by the Court on the 28th of February, 1913, and the order "settled" as heretofore entered was directed to be stricken out and the case ordered to be placed upon the January Docket of this Court No. 78. Thereupon, an agreement of counsel dated the 6th of March, 1913, was filed, submitting the case for our determination on the record and briefs, as heretofore filed in this Court.

The general legal principles underlying this case are well and fully stated by JUDGE BOYD, in his opinion, in the Court below. The questions raised and discussed at the hearing are covered by the opinion, as set out in the record now before us.

For the reasons stated, and upon the principles announced in the opinion of the Court below, we will affirm the decree appealed against, with costs to the appellee in this Court and in the Court below. The opinion is as folows:

The bill in this case was filed to set aside a deed from the Bear Creek Lumber Company to Harry E. Clark and John McCullough, and to have the property sold for the payment of the plaintiff's claim. The deed is dated June 22nd,

1908, and purports to be in consideration of one dollar "and other good and valuable considerations, it thereunto moving." It was executed by Walter S. Taylor, its president, under its corporate seal and is attested by M. J. Lang, assistant secretary.

*First.* The debt claimed to be due the plaintiff is a note dated May 28, 1908. It was alleged in the answer that the note was the personal debt of W. S. Taylor and that he made the note in the name of the company without its authority, but under section 43 of Article 13: "Every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value." Moreover, Mr. Annan testified that they took it, believing it to have been issued by the company to Taylor for money due him, and he thought Taylor so stated at the time. The note was payable to Taylor's order and endorsed by him. As there is no testimony to meet the effect of the statute, or the evidence of Mr. Annan, I will treat the indebtedness of the company as established. The subsequent note of Taylor of December 2nd, 1908, not only did not treat the company's note as paid, but on the contrary it was referred to as part of the collateral.

*Second.* There was no sufficient consideration from the company to support the transfer of its property to the grantees. With the possible exception of a small debt due to Mr. McCullough for taxes paid, the indebtedness claimed to be due Messrs. Clark and McCullough was manifestly Taylor's individual indebtedness, and not that of the company. The agreements filed and relied on show that, and Mr. McCullough testified as follows: "Q. State whether there was any consideration for the said deed marked 'Plaintiff's Exhibit A' aside from the 50 and 27 acres belonging to the Bear Creek Lumber Company and the debts that Taylor owed to Clark and you individually. A. No, sir; nothing more than some back taxes that I paid." The amount received by the company for those two tracts (50 and 27 acres) was $308,

of which Messrs. Clark and McCullough claimed one-half, but even that was under their agreement of April 18th, 1901, which was between Clark and Taylor and was not an agreement on the part of the company to pay them.   .

It is not necessary to cite authorities to show that the property of the company could not be used to pay Taylor's debts, to the prejudice of creditors of the company, and of course, the purchase of stock of the company by Taylor does not make the company's property liable for the purchase money due him for such stock.

In the absence of express authority the company itself could not purchase its own stock and anyone lending a corporation money with which to buy its own stock (knowing that was to be the use of it) could not recover from the company to the prejudice of its creditors. *Md. Trust Co.* v. *Mechanics' Bank,* 102 Md. 608. That principle is applied even to endorsers on notes of corporations given for such purpose. *Burke* v. *Smith,* 111 Md. 624.

*Third.* The only remaining question in this case is whether Taylor becoming the sole owner of the stock of the company, as the defendants claim, enabled him in the name of the company to convey property standing in its name to Clark and McCullough in order to pay his individual debts, although the company itself owed debts. If that can be done, then the grossest fraud could be perpetrated with impunity and bankrupt laws or insolvent laws intended to prevent preferences could be readily avoided. I do not mean to intimate that these gentlemen were guilty of actual fraud in accepting this property in payment of debts due them, for the testimony of Mr. McCullough shows that he did not know of any indebtedness by the company and knew nothing of this note until sometime after it was given, but I refer to the consequences that might follow if such rule be established. It may be that if Taylor was the sole owner of the stock of the corporation he could have given at least a good equitable title to these grantees by a conveyance executed by himself, as against all subsequent creditors, but that is

not this case.    The conveyance was not attempted in his own name, and of course he could not have conveyed the legal title to real estate in that way, but the deed was made by the corporation, the grantees themselves thereby recognizing there was such a corporation, and that corporation owed at least this debt, whether it owed others or not.    Apparently the legal entity known as the Bear Creek Lumber Company was kept in actual existence and a month before the execution of the deed it made this note, although I understand Mr. McCullough to admit in his testimony that the company had no other property after this was conveyed to him and Mr. Clark.    It might be said in passing, as reflecting upon a point considered above, that if Taylor did own all of the stock and was the president and virtually the board of directors, there can not be much question about his authority to bind the corporation.

We are aware of no case in this State which would permit the transfer of property standing in the name of a corporation for the payment of the debts of an individual, although that individual be the sole owner of the stock of the corporation, to the prejudice of creditors of the corporation existing at the time of the transfer.    In *Swift* v. *Smith*, 65 Md. 428, one of the principal cases in this State on the subject of sole ownership of stock of a corporation, such statements are made as "It does not appear that any existing creditors were injuriously affected thereby the appellees became such afterwards" (page 433).    "The appellees' claim arose from sales to the corporation and credit accorded it after the mortgage to Swift," etc.

In speaking of that case in *Pott & Co.* v. *Schmucker*, 84 Md. 535, JUDGE McSHERRY said on page 553: "It was said, in effect, that such sole owner might individually make a valid mortgage of all the property of the corporation, *and that after such a mortgage was recorded it would be binding on all persons thereafter dealing with or trusting the corporation.*"    (Italics mine.)

When one person is the owner of all the stock of a corporation, a Court of Equity will go behind the mere form, when necessary to prevent fraud or prevent injustice, but it will not permit an individual to hold property and contract debts in the name a corporation, the stock of which he is sole owner, and then use that property for the payment of such of his individual debts as he chooses to pay, leaving the corporation's existing creditors unprovided for.

There is nothing in the agreements of 1901 which can change the situation. In the first place they were not on record, and it is not shown that the plaintiff had any notice of them until after it had discounted the note. The company was not a party to any of the agreements and in the one of April 18th, 1901, Taylor only agreed to convey to Clark, a one-half interest in "the Gleanings." Apparently he still claimed to own a one-half interest in that tract as late as December 2nd, 1908, as shown by his paper of that date allowed to Mr. Annan, but Messrs. Clark and McCullough, however, denied such interest and it may be possible that that paper referred to some other land, as it is not accurately described. I find nothing in the evidence or papers, as suggested by the defendant's solicitor, that Taylor informed the bank that he only claimed a one-half interest in the property, excepting the paper of December 2nd, 1908, which was over six months after this note was discounted. Of course that could not affect the liability of the property of the company for its debts contracted May 28th, 1908.

So without further prolonging this opinion by discussing other questions, my conclusion is that the plaintiff is entitled to have this deed set aside, and have the property sold by a trustee to be appointed by the Court, unless the note of the plaintiff with interest from maturity, together with the costs of this proceeding, is paid within sixty days from the date of the decree which I will sign, if presented to me.

It follows that decree of the Court below will be affirmed, with costs to the appellee.

*Decree affirmed, with costs.*