GEORGE A. SOLTER, Trustee in Bankruptcy, *vs.*
WILLIAM D. MACMILLAN.

*Fixtures—Constructive Annexation—Essential Appliances—
Mortgagor and Mortgagee.*

Rings, molds, and cores, used in a tire manufacturing plant, the value of which was almost entirely in their use in connection with certain machinery annexed to the soil, which were made expressly for that plant and were of little value elsewhere, and which were essential to the manufacture of the larger sized tires, *held* to be fixtures as between the mortgagor and mortgages of the plant.                    pp. 584-587

In a mortgage of the real estate of a manufacturing company, with the buildings and equipment, a provision attempting to convey after-acquired chattels, while having otherwise

no validity or effect, may have a bearing upon the intent as to the use of such articles in connection with the work of the factory, and may be relevant evidence for that purpose.     p. 587

In determining whether articles are fixtures as between the mortgagor and mortgagee of land, it is immaterial whether they were installed upon the land before or after the execution of the mortgage.                                             p. 587

The requirement that articles not actually annexed to the soil but merely used in connection with machinery so annexed shall, in order to be regarded as constructively annexed, "be essentially necessary to the working of the principal machinery," means that they must be necessary, not to the mere physical movement of the machinery, but to the efficient working of the machinery in accomplishing the purpose for which it is adapted.                                               pp. 587, 588

*Decided February 26th, 1925.*

Appeal from the Circuit Court of Baltimore City (FRANK, J.).

Proceedings by William D. Macmillan to foreclose a mortgage executed by the Delion Tire and Rubber Company. From an order overruling exceptions to the foreclosure sale, George A. Solter, trustee in bankruptcy of said company, appeals. Affirmed.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Walter H. Buck* and *James Morfit Mullen,* for the appellant.

*William D. Macmillan* and *Joseph T. Brennan,* with whom were *Semmes, Bowen & Semmes* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

The appellant is the trustee in bankruptcy of the Delion Tire and Rubber Company, and the appellee is the assignee of a mortgage from that company to the Atlantic Trust Company, trustee, dated February 1st, 1922. The company was, on December 27th, 1923, adjudicated a bankrupt on the petition of creditors filed December 26th, 1923, and its answer filed the following day admitted its insolvency.

The mortgage to the trust company conveyed all of the real estate of the mortgagor.

> "Also all and singular the buildings, structures, and improvements located on the above described premises, all machinery, equipment, and fixtures in said buildings and structures, and on said premises * * * , now owned by the company or which it may hereafter acquire.

> "Also all patents, patent rights and licenses, licenses under patents, trade marks, trade names, inventions, improvements, formulas, patterns, secrets and other processes now belonging to the company or which it may hereafter acquire.

> "And all other property, real, personal and mixed, which the company may hereafter acquire, except the merchandise, materials, supplies, manufactured goods, goods in the course of manufacture, automobiles, automobile trucks, stocks of corporations, bonds and other securities, except notes and accounts receivable, bills of exchange, trade choses in action and except cash other than that due and payable to the trustee under any of the provisions hereof."

The mortgage was duly recorded in both the land and chattel records of Baltimore City. On default under the covenants and conditions of said mortgage, appellee, on December 22nd, 1923, instituted foreclosure proceedings, and on February 6th, 1924, after due advertisement, sold to the International Bank of Washington, D. C., the holder of a majority of the mortgage bonds, for $65,000, "all of the real and leasehold estate, plant, equipment, structures, improve-

ments, machinery, fixtures, patents and all other property
covered by said mortgage, being and constituting the plant
of the Delion Tire and Rubber Company."

Included in the machinery and equipment were certain
articles purchased after the date of the mortgage, which
appellant claimed were personal chattels and which had sub-
sequently been conveyed to the mortgagee, and to these he
publicly claimed title at the sale and protested against their
sale by appellee. On the sale being reported he filed excep-
tions to its ratification.

The trial court in its opinion separated these articles into
three classes, as follows:

1. Machinery and equipment physically affixed to the
realty costing $2,628.33.

2. Rings, molds and cores, costing $11,126.50.

3. Furniture and office fixtures and equipment costing
$419.52.

The first and second classes the learned chancellor held to
be fixtures, which went with the real estate under the mort-
gage. The third he held to be merely personal chattels not
subject to the mortgage, and he found the value thereof to
be $375, and announced that if the purchaser at the sale
would pay or secure the payment of that sum to the trustee
in bankruptcy he would overrule the exceptions and ratify
the sale. This having been arranged, the sale was ratified.

This appeal is from the order overruling the exceptions
and ratifying the sale.

It is conceded that the ruling of the chancellor was cor-
rect as to the first and third classes.

The sole question is: Did title to the articles in the
second class pass under the mortgage or did it go to the trus-
tee in bankruptcy? The determination of this question de-
pends upon whether at the date of the institution of the
bankruptcy proceedings these articles were *fixtures* or merely
personal chattels.

There is much discussion in the briefs as to the effect
of the amendment of 1910 to the Bankruptcy Act, vesting a

trustee in bankruptcy "with all the rights, remedies and powers of a creditor holding a lien by legal or equitable proceedings * * * and with all the rights, remedies and powers of a judgment creditor holding an execution duly returned unsatisfied * * *."

Giving that amendment its utmost effect, the position of such trustee could not be better than would have been that of a judgment creditor with an execution duly levied on the property in question at the date of the bankruptcy. And even if it were conceded, which we do not decide, that the trustee in this case held such a position, our question would not be answered, because the relative positions of the mortgagee and such a judgment creditor, if there were any, would still depend upon whether the articles in question were covered by the mortgage of an earlier date than that of the execution. It would be different if the controversy were between a trustee in bankruptcy and one holding a defective mortgage. Most of the cases cited deal with situations of that kind, and do not help us in the present situation.

Here the question is the legal character of the articles in controversy as between the mortgagor and mortgagee.

There is no subject as to which the authorities are more hopelessly in conflict. But the law in Maryland on this subject was settled, in principle, by the case of *Dudley & Carpenter v. Hurst, Miller & Co.*, 67 Md. 44. In the much earlier case of *Kirwan v. Latour*, 1 H. & J. 289, it had been held that in order to constitute a fixture a chattel must be actually fastened to the soil. In the later case, this Court, in overruling the earlier one, said:

"This case was decided in 1802. But since the decision of that case the doctrine of *constructive* annexation has been much discussed. From the general current of decisions, the following principle seems clearly deducible.

That where in the case of machinery the *principal part* becomes a fixture by actual annexation to the soil, such part of it as may be not so physically annexed, but which if re-

moved would leave the principal thing unfit for use, and would not of itself and standing alone be well adapted for general use elsewhere, is considered constructively annexed.

Thus the key of a lock, the sail of a wind-mill, the leather belting of a saw-mill, although actually severed from the principal thing, and stored elsewhere, pass by constructive annexation. They must be such as go to complete the machinery, which is affixed to the land, and which, if removed, would leave the principal thing incomplete and unfit for use."

And then, applying the principle announced to the facts of that case, the Court continues:

"In this case there are some articles not actually annexed to the soil, such as crates, capping machines and work tables, but are essentially necessary to the working of the principal machinery, and pass by constructive annexation. The main machinery would not be in working condition without them, and they are not adapted for general purposes.

We are therefore of opinion that the whole machinery of the canning factory passed under the mortgage to Bowie, and consequently to his vendees under the mortgage sale."

It was said in that case that the tests by which a fixture is determined are generally these:

1. Annexation to the realty either actual or constructive.

2. Adaptation to the use of that part of the realty with which it is connected.

3. The intention of the party making the annexation, to make the article a permanent accession to the freehold, this intention being inferred from the nature of the article annexed, the situation of the party making the annexation, the mode of annexation, and the purpose for which it was annexed.

This case has been cited with approval in a number of later cases. *Warren Mfg. Co. v. Baltimore,* 119 Md. 188; *Mt. Vernon Co. v. Continental Trust Co.,* 121 Md. 163; *Talbott v. Silicite Co.,* 144 Md. 654. See also *Ewell on*

*Fixtures* (2nd Ed.), star page 33; 26 *C. J.*, page 722, and note 55.

Attention is directed in appellant's brief to the record in the *Dudley & Carpenter* case, *supra*, wherein it appears that the crates in that case were integral parts of certain kettles, into which they fitted, which kettles could not be taken up without tearing up the floor and removing the sleepers. But there is nothing in the record of that case to show that the capping machines or tables were integral parts of any machinery physically annexed to the building or soil.

We think the articles in controversy in the present case bear a relation to the general machinery of the factory similar in character to that sustained by those above mentioned to the canning factory in the *Dudley & Carpenter* case.

A description of the articles in question is found in the following testimony:

"A pair constitutes a set of rings which are bolted around the bead of an uncured tire to hold the air-bag inside of the casing while being cured."

"The mold is the receptacle that holds the tire during the vulcanization which gives the imprint of the tread design and the lettering on the mold."

In exhibiting a tire, one witness said: "This tire (indicating) is ready for the baking process now. It has been formed around an iron circular form by the tire builder and is completely built on that. We call that (indicating) a core."

This witness further testified that these articles are used by themselves and separate from any other machinery; but without them the machinery could not turn out any tires, nor could these articles turn out tires by themselves unless they were used in connection with the particular machinery on the premises, or some other machinery of the same type; and, furthermore, they could not be used by any other company. This testimony was uncontradicted.

The testimony shows that their value was almost entirely in connection with the annexed machinery with which they

were used, and that they would be of little value elsewhere.
Part of them were patented, and the patent rights were con-
veyed to the mortgagee. They were made expressly for that
plant and were essential to the manufacture of the larger size
tires which it was important for the plant to produce in
order to compete with its business rivals.

It remains to consider the objection that these articles
were installed after the date of the mortgage, and were not
intended to be substituted for worn out or broken original
parts. That would be a valid objection if appellee's rights
depended upon the attempt in the mortgage to convey future
acquired chattels. Such provision has no validity and no
effect, except as it may have a bearing upon the intent as to
the permanent use of such articles in connection with the
work of the factory. For that purpose it may be relevant
evidence. *Dudley & Carpenter v. Hurst, Miller & Co.,
supra.; In re Russell Falls Co.,* 249 Federal, 260.

In the *Dudley & Carpenter* case the mortgage did not
expressly convey chattels, but such as were constructively
annexed were held to have passed under the clause, "To-
gether with the buildings and improvements thereupon, and
the rights, roads, ways, waters, privileges, appurtenances
and advantages thereto belonging, or in anywise appertain-
ing." And they were held to pass because they were "essen-
tially necessary to the working of the principal machinery."

It was there noted that, in *McKim v. Mason,* 3 Md. Ch.
Dec. 186, Chancellor Johnson had decided that such articles
as were fixtures passed to the mortgagee even when they
were placed upon the land after the mortgage was executed.
So that, having decided that the articles in controversy were
fixtures, it makes no difference whether they were installed
before or after the execution of the mortgage, any more
than would the time of the erection of a building on mort-
gaged property.

Nor do we understand that "essentially necessary to the
working of the principal machinery" means necessary to the
mere physical movement of the machinery. It rather means,

as shown by the facts of the case in which the expression was used, the *efficient* working of the machinery in accomplishing the purposes for which it is adapted. So that if the plant in the present case was reasonably equipped otherwise for the manufacture of a larger size tire than it was making at the date of the mortgage, but had not the articles now in controversy, the addition of such articles might well be necessary for the efficient working of the principal machinery. The testimony shows they were purchased for that purpose. A fair test would seem to be, Would such articles be held to be fixtures if installed in an additional building, intended solely for the manufacture of tires of the larger size, erected after the date of the mortgage? If so, there is no reason why they should not be so considered when installed in the original building for the same purpose.

We find no error in the order appealed from.

> *Order affirmed, with costs to appellee.*