STATE OF MARYLAND, For the Use of Home Mortgage Company *v.* STEPHEN C. LITTLE et al.

[No. 27, April Term, 1929.]

*Decided May 24th, 1929.*

The cause was argued before BOND, C. J., PATTISON, URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Charles B. Bosley* and *Laurie H. Riggs,* for the appellant.

*Herbert Levy, Assistant Attorney General,* and *J. Kemp Bartlett, Jr.,* with whom was *Thomas H. Robinson, Attorney General,* on the brief, for the appellees.

URNER, J., delivered the opinion of the Court.

The official bond given by the clerk of the Superior Court of Baltimore City, under statutory direction, for the biennial period beginning December 1st, 1923, was conditioned upon the faithful performance of all the duties required of him by law. An alleged breach of his duty to index an instrument in accordance with legal requirements is the basis of this suit on the bond.

The amended declaration averred that one of the defendant clerk's duties was to index all conveyances recorded among the Land Records of Baltimore City in a system of land indexes known as the Block Index System, adopted by authority of the Acts of 1886, ch. 289, and an order of the Supreme Bench of Baltimore City, certified copies of the act and order being exhibited with the declaration; that upon the annexation in 1918 of a portion of Anne Arundel and Baltimore counties to Baltimore City, it became the duty of the clerk to extend the Block Index System to the annexed territory, which duty he performed by designating the added area as one block known as the New Annex, as had been done by his predecessor in office at the time of the annexation of territory to the city in 1888, until the new district could be divided into blocks; that it was the duty of the clerk to index the names of the parties to all recorded instruments affecting land within the annexed area in the New Annex index; that the defendant clerk, as had his predecessor at the time of the annexation in 1888, continued to use the New Annex index until the completion in 1926 of the block sub-division of the new district, after which block indexes were

used corresponding in number with the blocks in which the conveyed land was located; but that a certain mortgage of land in the New Annex, dated April 24th, 1925, and filed for record on that day, was not indexed in the New Annex index, although the proper fees for that service were paid, in consequence of which omission the equitable plaintiff, without notice of that lien and after a search of title by a careful and capable examiner, had failed to discover its existence, accepted a mortgage on the same property as security for a loan, and subsequently, for the protection of that investment, was compelled to pay the prior mortgage. The suit was brought to recover for the loss thus alleged to have been caused.

The demurrer to the declaration was sustained, and no further leave to amend being desired, a judgment was entered in favor of the defendants for costs. The appeal is from that judgment.

The Constitution of Maryland, by section 38 of Article 4, provides that the clerk of the Superior Court of Baltimore City "shall receive and record all deeds, conveyances and other papers, which are or may be required by law to be recorded in said city." It was provided by the Acts of 1833, ch. 88, secs. 1 and 3 (now sections 61 and 62 of article 17 of the Code of Public General Laws), that the clerks having charge of land records shall make and continue a full and complete general alphabetical index of all deeds, mortgages, bills of sale and other conveyances on record in their respective offices. By the Acts of 1865, ch. 157 (codified as section 59 of article 17), clerks were directed to "record all deeds, mortgages, bills of sale and other instruments required to be recorded, in a well-bound book, which book shall contain an alphabetical index in the names of all the parties to such deed, mortgage, bill of sale or other instrument of writing; * * *." It was therefore made the duty of the clerks, by those statutory provisions, to maintain both a general alphabetical index of deeds and other papers received for registration, and an index in each record book of the conveyances therein recorded.

In 1886, by chapter 289 of the Acts of that year (now sections 802 and 803 of the Baltimore City Charter & P. L. L. 1927), it was provided as follows:

"It shall be the duty of the Clerk of the Superior Court of Baltimore City to formulate and prepare a new plan or system for the indexing of all deeds, conveyances and other papers required by law to be recorded among the land records in his office, and submit the same to the Supreme Bench of Baltimore City for its approval.

"Upon the adoption and approval of the plan or system of indexing authorized by the preceding section, the Clerk of the Superior Court of Baltimore City is authorized and directed to make and prepare for use in his said office, a new index of all land records and conveyances in his keeping, upon the plan or system so adopted and approved, in books suitable for the purpose; and all deeds and conveyances hereafter recorded among said records, shall be indexed upon the plan or system aforesaid."

Pursuant to that authorization, Mr. James Bond, clerk of the Superior Court, submitted to the Supreme Bench for its approval the following "amended plan" of indexing:

"1. To designate by number on a copy of Poppleton's maps of the City of Baltimore, as nearly as may be, every entire block or square of ground thereon; a copy or copies thereof to be conspicuously exhibited in the office of the Clerk of the Superior Court.

"2. All deeds and instruments of writing, required by law to be recorded among the land records in the office of the said Clerk, and left for record on and after the first day of January, 1887, describing or affecting land, the location of which in any one or more of the blocks or squares designated as aforesaid clearly appears, shall be indexed, in the names of all the grantors and grantees therein, in an index to be known as the 'Index of Located Conveyances,' on a page or pages of index books corresponding in number with that of the block or square, blocks or squares, desig-

nated as aforesaid on said maps; which index shall show in figures the numbers and folios of the record books in which such deeds or instruments of writing are recorded.

"3. All deeds and instruments of writing, required by law to be recorded in the land records in the said office, and left for record on and after the first day of January, A. D. 1887, the location of which, with reference to the aforesaid blocks or squares, shall not clearly appear, shall be indexed, in the names of each and every one of the parties thereto, in a conveniently sub-divided alphabetical index, to be known as the 'Index of Unlocated Conveyances'; which index shall show in figures the numbers and folios of the record books, in which such deeds or instruments are recorded.

"4. All deeds and instruments of writing recorded in the Land Records of the aforesaid office from the 1st day of December, 1851, to the 31st day of December, 1886, both inclusive, shall be re-indexed in the same manner as hereinbefore provided for indexing conveyances to be recorded on and after the 1st day of January, 1887.

"5. In addition to the Block System of Indexing as hereinbefore provided for, the Clerk of the Superior Court of Baltimore City shall make a full and complete conveniently subdivided alphabetical index, to be known as the 'General Index' of all deeds and instruments of writing affecting lands or any interests therein, which shall be left for record in his office on and after the first day of January, 1887, which index shall be in the names of each and every party to every deed or instrument of writing, and shall refer to the book and page of the record of the several deeds or instruments of writing entered thereon."

The plan thus recommended by Mr. Bond, as clerk of the Superior Court, was approved by the Supreme Bench of Baltimore City on July 1st, 1886. While the block system of indexing for which it provided was to be based upon speci-

fied maps of the territory then embraced within the city limits, it was applied by the clerks of the Superior Court, as alleged in the declaration, to the areas added to the city by the annexations of 1888 and 1918. At each of those periods the whole of the annexed district was treated as one block for indexing purposes until its subdivision into smaller sections could be accomplished. It was before the subdivision of the 1918 annex was completed that the clerk received the mortgage which is alleged in this case to have been imperfectly indexed. There is no allegation that he omitted to list it in the general index, and the sole and specific inquiry is whether he was charged by law with the duty of entering it also in the index which he had provided for conveyances of land in the New Annex.

The Block Index System authorized in 1886 was not planned to be used until the city had been subdivided into the blocks to which the index should refer. The application of that system to each of the subsequently annexed areas as a single block, prior to its subdivision, was not in accordance with the plan as originally formulated and approved. By extending the system to the annexed territories the clerk no doubt rendered a useful service in facilitating reference to conveyances of property in those sections, but unless it was a duty "required of him by law," this suit on his bond is not maintainable. *State v. Fidelity & Deposit Co.,* 147 Md. 194; *State, use of Southern Maryland Bank v. National Surety Co.,* 126 Md. 290; *State, use of Smith, v. Turner,* 101 Md. 584, 587. The reasons supporting the view that the bond is not liable in this action were well stated in the opinion delivered by Judge Frank in the lower court, which was, in part, as follows:

"The declaration in this case makes no allegation with respect to 'Poppleton's Plat.' I do not know whether I am empowered to take judicial notice of what is meant by that plat. If so, I should note that this is an old plat of Baltimore City, made in February, 1818, at a time when its boundaries did not include the land embraced in the two annexations of 1888 and 1918, respectively. This would sufficiently appear

from the fact that it is made the basis of a report which was approved by the Supreme Bench on July 1st, 1886. If, however, I am not authorized to take judicial notice of what is meant by 'Poppleton's Plat,' the allegations of the declaration must be taken most strongly against the pleader, and as this plat conclusively appears from the declaration in this case to have been made prior to 1886 and is described as a plat of Baltimore City, the inference against the pleader is incontrovertible that it must refer to Baltimore City as its boundaries were at that time. I must, therefore, conclude that it did not embrace any of the territory included in either of the above mentioned annexations.

"The clerk, by order of the Supreme Bench, is required to designate by number on a copy of Poppleton's maps of the City of Baltimore, as nearly as may be, every entire block or square of ground thereon. The index of located conveyances is to apply only to conveyances of the land which may be located in some one or more of such blocks or squares, and the block in which it is to be indexed and the index prepared is on the basis of the block number as designated by the clerk for such block or square on Poppleton's plat.

"The requirement of paragraph three of Mr. Bond's report, that all instruments, the location whereof, with reference to the established blocks, may not clearly appear should be indexed in the 'Index of Unlocated Conveyances,' obviously cannot apply to land situate in the old and new annexes. Clearly it applies only to such instruments as affect land which, if clearly described, would be located in one of the established blocks on Poppleton's Plat and within the then limits of Baltimore City. In the absence of such clear description, such land could not be allocated to any such block, and would necessarily be treated and indexed as unlocated. The report is framed with reference to the then existing boundaries of Baltimore City as delineated upon Poppleton's Plat. The Supreme Bench could have had no idea of the annexation of 1888, and a fortiori, of the annexation of 1918. Land, fully described but lying in either the Old or New Annex, is not fairly to be designated as land 'the location of which,

462

with reference to the aforesaid blocks or squares, shall not clearly appear.' Its location is definitely and accurately known. It is only property whose location does not clearly appear that is covered by this section of the report.

"The conclusion is inescapable, therefore, that, by the order of the Supreme Bench, of 1886, no duty was imposed upon the clerk to provide a block index for the New Annex, which did not come into the city until 1918.

"The Annexation Act of 1918 (chapter 82, Acts 1918) makes no reference to the indexing of Land Records. Section 2 subjects the annexed territory to 'all the provisions of the Constitution of Maryland and of the Baltimore City Charter and other laws applicable to Baltimore City.' These, of course, include the provisions of chapter 289, Acts 1886, now sections 802 and 803 of the City Charter. Section 803 requires the clerk, upon the adoption and approval of the. new plan or system, to put the same into effect 'and all deeds and conveyances hereafter recorded among said land records, shall be indexed upon the plan or system aforesaid.' As we have seen, the plan, or system adopted, by its own limitations, could apply only within the boundaries of the then city as shown on Poppleton's plat. This provision of section 803 could not be held to require conveyances of land entirely without the scope of the plan to be indexed in accordance with the plan. This would involve a physical impossibility.

"The declaration discloses, and I have found, no provision of law requiring the clerk to keep or maintain a block index for the New Annex of 1918. His action in providing an index therefor would appear to have been purely voluntary and not by virtue of any requirement of the law.

"The bond sued on in this case is conditioned upon the faithful performance by the clerk of all the duties 'required of him by law, as such clerk.' Not being under any duty to maintain a New Annex block index, his failure to do so, characterized in the declaration in this case as negligence in maintaining said block index, is not within the condition of his said bond.

" 'In the absence of statutory provision to the contrary,

it is not the duty of a register to prepare and keep an index for the books of record used for recording instruments affecting title to real estate.' 34 *Cyc.* 1020-B4.

"In the case of *Temple v. The People*, 6 Ill. App. 378, it was held that a recovery upon his official bond can not be had for the failure of the recorder to enter a mortgage upon a sectional index, the law not requiring him to keep such an index, and it appearing that such mortgage was properly indexed in a book kept for that purpose, of which the plaintiff had knowledge, but failed to examine. The law of Illinois required the keeping of a complete index of all deeds, mortgages, etc. The recorder voluntarily kept a sectional index, which seems roughly to correspond to our block index. The court said that 'to entitle the plaintiff to recover upon the official bond of appellant (the recorder), it must appear that the appellant has failed to perform some official act enjoined upon him by the law.'

"It would appear, therefore, that the official bond of the clerk is not liable for a failure on his part to index in a block index a paper affecting land in the New Annex of Baltimore City."

As we concur in that conclusion, we agree also with the lower court that the question as to the liability of the clerk, independently of his bond obligation, under the circumstances described in the declaration, is not involved in the decision. It is also unnecessary to decide whether injury resulting from the omission complained of is sufficiently alleged, or whether the failure to examine the general index would affect the plaintiff's right of action.

*Judgment affirmed, with costs.*