In re OLIVER C. PUTNEY GRANITE CORPORATION.

SILBERSTEIN v. BALTIMORE COUNTY BANK.

No. 8187.

District Court, D. Maryland.

March 19, 1936.

**32**

William Saxon, of Baltimore, Md., for trustee.

James C. L. Anderson, of Towson, Md., for bankrupt.

CHESNUT, District Judge.

The matter now before the Court is the appeal of the Trustee in Bankruptcy of Oliver C. Putney Granite Corporation from an order of the Referee (J. LeRoy Hopkins) dated March 12, 1936, by which he refused to set aside a mortgage from the bankrupt to the Baltimore County Bank dated June 20, 1930, to secure an indebtedness of $30,000, reduced by partial payments, however, to the sum of $21,500, with interest at 6% from September 20, 1934. The order of the Referee sustained the mortgage as a valid lien for the indebtedness thereunder still due and unpaid.

The Referee filed a lengthy and well considered opinion discussing the law and facts of the case, in which he gives quite fully his reasons for the order that he passed. As the facts are fully stated in the opinion and are uncontradicted, it is unnecessary to repeat them here.

After hearing counsel at some length, and consideration of the authorities cited in support of the petition to review the Referee's findings, I reach the conclusion that the order of the Referee must be affirmed.

The mortgage is attacked by the Trustee in Bankruptcy on three grounds: (1) That it was not executed with due corporate authority; (2) that the chattels which the mortgage purports to cover are insufficiently described with the alleged result that the mortgage as to them is defective and void, and (3) that the mortgage has not been duly recorded as required by the Maryland statutes. In his opinion the Referee considered separately each and all of these alleged defects in the validity of the mortgage and overruled all of them. I agree with the final result reached by him as to all three points.

At the outset I will say that I have no doubt that if the mortgage were defective for any of the reasons stated, it is open to attack by the Trustee in bankruptcy. Fairbanks Steam Shovel Co. v. Wills, Trustee, 240 U.S. 642, 36 S.Ct. 466, 60 L.Ed. 841; In re Sachs (C.C.A.) 30 F.(2d) 510, 514; Moore, Trustee, v. Bay, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133, 76 A.L.R. 1198; Solter v. Macmillan, 147 Md. 580, 584, 128 A. 356.

1. *The alleged lack of corporate authority for the mortgage.* The mortgage covered both real and personal property. It is not contended that it is defective in form as to execution, acknowledgment or time of recording in the proper County of the State. It was executed and acknowledged by the president of the corporation after discussion with and approval of the secretary and treasurer.

The defect set up is that it was not authorized by the Board of Directors. It is true that the mortgage does not on its face recite such prior authority for its execution, and the facts do not show that there was ever any formal approval of the mortgage by the directors. In his opinion overruling this point made against the mortgage the Referee apparently placed his view largely on the consideration that the corporation was in substance a one-man corporation, in which the president, who executed the mortgage, owned 96% of the stock, and that the lack of formal authority by the directors was unimportant because the execution of the mortgage by the chief stockholder made it at least an equitable mortgage conferring an equitable title under the doctrine of the Maryland cases of Swift v. Smith, 65 Md. 428, 5 A. 534, 57 Am.Rep. 336; Bear Creek Lumber Co. v. Second Nat. Bank, 120 Md. 566, 570, 87 A. 1084, and Pott v. Schmucker, 84 Md. 535, 36 A. 592, 35 L.R.A. 392, 57 Am. St.Rep. 415. I prefer to put the ruling on this point, however, on a somewhat different consideration. It is true that there was never any formal or express prior authority for or subsequent ratification of the mortgage by the directors in meeting duly assembled. But the facts show that there were only three directors of the cor-

poration, two of whom, the president and the secretary, expressly approved the mortgage, and the third, a stockholder holding less than 1% of all the stock of the corporation was a former employe who had apparently severed his connection with the corporation before the mortgage was made and whose whereabouts were unknown thereafter. The president and secretary between them owned at least 99% of all the stock of the corporation, and the president was general manager of the business which, prior to the incorporation, shortly before the mortgage was made, had been for a long time operated by him as his individual business. The mortgage for $30,000 to the bank was made to secure a then existing antecedent indebtedness in the amount of $24,392.05 and as security for a new advance of $5,607.95. The corporation continued after the making of this mortgage to do its banking business with the same bank and when the bankruptcy proceeding was filed on April 4, 1935, the mortgage had been reduced by partial payments on account of principal to $21,500. It further appeared that there never had been any formal corporate meetings of stockholders or directors or minutes thereof after the original organization meeting. Under these circumstances there was in my opinion no absolute necessity for a formal resolution of the board of directors to authorize the mortgage. The authority to the president to make the mortgage under such circumstances could and should be readily implied, and the corporation and its directors and stockholders estopped from thereafter questioning the validity of the mortgage by reason of their long acquiescence without objection in what had been done by the majority of the directors and the executive officers of the corporation. Under a practically parallel factual situation a corporate mortgage was upheld by the Maryland Court of Appeals in Buchwald Transfer Co. v. Hurst, 111 Md. 572, 75 A. 111, 19 Ann.Cas. 619, with opinion by Chief Judge Boyd. And likewise under similar facts a corporate mortgage was upheld by the Circuit Court of Appeals for the 6th Circuit in Cunningham v. German Ins. Bank, 101 F. 977, where the court consisted of Circuit Judges Lurton and Day (both subsequently Justices of the Supreme Court) and Severens. On page 980, of 101 F. in the opinion in that case it was said:

"The board of directors was dormant. The rule is that where, by the direction or acquiescence of the stockholders, the executive officers of a corporation assume and exercise the functions of the board of directors, the corporation and those deriving rights from it while it is so managing its affairs are bound by the acts of its officers to the same extent as if they had been directed by the board."

And the same principle was recognized by the Circuit Court of Appeals of this 4th Circuit in Maryland Finance Corporation v. Duvall, Trustee, 284 F. 764, 768, although the facts in the particular case did not justify the application of the rule. See, also, Brune, Maryland Corporation Law, § 150, and notes, and Cook on Corporations (8th Ed.) vol. 4, § 809, p. 3623, and copious notes appended to the text.

2. It is urged that even if the mortgage is valid as to the real property, nevertheless it is invalid as to the chattels described therein because the description is too general and uncertain. With regard to this contention of counsel for the Trustee in bankruptcy, the Referee in his opinion placed the more important emphasis on his finding that the personal property described in the mortgage, to the extent that it was still on the property and available at the present time for the benefit of any one concerned, that is had not been removed by trespassers, constituted fixtures which passed under the mortgage by the operation of law, irrespective of their inclusion and description in the mortgage as personal property. The language of the mortgage, after describing the real estate, proceeds as follows:

"And upon the considerations aforesaid the said mortgagor does also hereby bargain and sell unto the said mortgagee, its successors and assigns, all the tools, machinery, appliances and other personal property now used by the mortgagor in the operation of its stone-cutting plant located upon the real estate hereinbefore described, including specifically one Electric Crane one Electrically driven Compressor one Gang Saw Carborundum Saw Polishing Mill Surfacing machine and Pneumatic tools."

It may indeed be doubted whether all the articles of personal property contained in this description as they possibly existed on the premises at the time the mortgage was made actually constituted in law fixtures which would pass to the mortgagee without their particular specification or inclusion in the coverage of the mortgage.

But as I read the facts stated in the Referee's opinion, I understand that, of the articles which may originally have been on the premises only those now remain there which by virtue of their bulk, size and weight and actual affixation to the premises are incapable of being removed from the premises without material damage to the building in which they are contained. And it appears also from the facts stated that these articles were machinery, apparatus, tools or implements which were especially designed for the operation of the premises as a stone-cutting plant. I am strongly inclined to agree with the conclusion of the Referee that the articles to which he particularly refers and describes and which apparently are all that now remain upon the premises, are indeed fixtures which would pass under the mortgage irrespective of their description as personal property. The applicable Maryland cases are well reviewed by the Referee in his opinion. See particularly Solter v. Macmillan, 147 Md. 580, 128 A. 356.

■ But however this may be, the Referee also concluded, and in this I very fully agree with him, that the mortgage description of the articles in question is legally sufficient and the mortgage is not defective in this respect. All that is required under the Maryland law is that the description of personal property in a bill of sale or chattel mortgage must be "sufficient to identify the subject-matter intended to be granted with reasonable certainty, according to the nature of the subject." State v. Maryland Casualty Co., 164 Md. 69, 76, 163 A. 856, 859. In that case the very general description of the articles covered by the bill of sale or mortgage was held insufficient but principally, as I read the case, because there was not (as there is here) any designation of the location of the property or anything whatever to distinguish it from other articles of the same kind or class. Thus it was said:

"The premises, town, county, or state where these articles were is not given. The business in which the seller was engaged or the uses to which these things were put is not mentioned. While some of the smaller articles are not susceptible of any more accurate description than the place where they were located and in whose possession they were and would remain, the more important goods and chattels can be described with certainty. Although there are numerous cash registers of the same make, and many automobiles and tractors of the same manufacture and design as those named in the bill of sale, yet every one may be positively identified by its motor or serial number, yet none is given. No attempt is made to describe anything distinctly."

But in this case the mortgage does specifically describe the location of the premises where the articles are to be found and, according to the testimony, those that still remained are of such nature that they can very readily be identified from the description in the mortgage. And no question is now presented with respect to any particular article or tool or piece of apparatus, other than those large articles particularly mentioned in the mortgage and now said to be actually permanently affixed or annexed to the premises.

■ 3. The alleged defect in the recording of the mortgage is said to lie in the fact that although it was fully recorded among the Land Records in the Clerk's office of Baltimore County, and indexed both among the Land Records and the Chattel Records, it was not also separately recorded among the Chattel Records. As to this point, the opinion of the Referee very adequately and clearly reviews the statutory law and describes the actual practice which prevailed in the Clerk's office in Baltimore County at the time the mortgage was recorded. The statutes then in force did not require the Clerk to keep separate Land and Chattel Records although as a matter of practice it seems that this was done for convenience. And it is to be noted that, in practice, one examining the records would not be misled or have any excuse for overlooking, or any difficulty in locating, the particular conveyance, because it was indexed both among the Land Records and the Chattel Records, and if the index of the Chattel Records alone were examined, reference would have been found to the record book in which the conveyance was recorded at length. It is now required by the Act of 1933, c. 346, amending section 59 of article 17 of the Maryland Code of Public General Laws (See Flack's 1935 Supp.) that the clerks of the Circuit Courts of the several Counties and the Superior Court of Baltimore City shall keep Land Records and Chattel Records separately. But this Act was not in force when this particular mortgage was recorded. There is nothing in Standard Finance Co. v. Little, 159 Md. 621, 152 A. 264, to help

the Trustee's contention on this point. See, also, State v. Little, 157 Md. 455, 462, 146 A. 386.

It is therefore ordered this 19th day of March, 1936, by the District Court of the United States for the District of Maryland, in Bankruptcy, that the order of the Referee in this case dated March 12, 1936, be and the same is hereby affirmed.