EDWARD F. BURKE *vs.* JOSEPH J. SMITH *et al.*

*Illegal Purchase of Its Stock by Insolvent Corporation—Action Against Endorser of Promissory Note Given for the Purchase Money.*

At a time when a corporation was insolvent, the plaintiff, its Vice-President, who knew or ought to have known of the insolvency, sold a number of its shares to the corporation which bought them for the purpose of reducing the capital stock. Part of the purchase price was paid in cash and a promissory note, executed by the Company and endorsed by some of its officers individually, was given for the balance. Under the law of the State where the Company was chartered, a corporation cannot lawfully purchase its own capital stock for the purpose of reducing the same until all of its creditors shall have been paid. In an action against the endorsers of the note by the original payee, *held,* that since he is not a holder in due course, but as an original party knew that the corporation was insolvent, and that the consideration for which the note was given was illegal, he is not entitled to recover.

*Decided December 1st, 1909.*

Appeal from the Superior Court of Baltimore City (HEUISLER, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and THOMAS, JJ.

*Geo. Dobbin Penniman,* for the appellant.

*Charles G. Baldwin,* for J. J. Smith, appellee.

*Frank Gosnell* (with whom was *Alfred Jenkins Shriver* on the brief), for R. H. Shriver, appellee.

BRISCOE, J., delivered the opinion of the Court.

The decision of this case turns upon the validity *vel non,* of certain promissory notes, dated January 6th, 1908, and payable to the plaintiff, Edward F. Burke, for $5,500. The notes were executed by the Fitzgerald-Wedge Company, and signed by its president J. J. Smith, and by its secretary and treasurer, William L. Norton. They were endorsed by J. J. Smith and Robert H. Shriver, the defendants, and by William L. Norton, now deceased. The suit was bought by the plaintiff as payee of the notes, to recover of the defendants as individual endorsers.

The Fitzgerald-Wedge Company was a corporation organized under the laws of the State of Delaware, on the 25th of August, 1905, and carried on business in the City of Baltimore. The defendant Joseph J. Smith was the president of the company, and the plaintiff E. F. Burke was its vice-president, a director and a large stockholder. The defendant Shriver was an employee of the company. William L. Norton, since deceased, was its secretary and treasurer. The appellant was the owner of 145 shares of the capital stock of the company; its entire capital stock amounted to 800 shares, at the par value of $100 each.

It appears that on or about the 2nd of January, 1908, the appellant agreed to sell his shares to the company at the reduced sum of $7,500. The sum of $2,000 was paid in cash by the company, and the residue of $5,500 was secured by the promissory notes here sued on. These notes were executed by the Fitzgerald-Wedge Company in part payment for the appellant's shares of the stock of the company, of the par value of $14,500.00, and it is admitted that this stock was purchased by the company for the purpose of reducing the capital stock of the company.

It also appears that at the date of the ineffectual attempt to reduce the capital stock of the company, for the purpose of purchasing the stock of the appellant, the corporation was insolvent, and was unable to meet its obligation in the usual course of business. On or about the 28th of January, 1908,

the company went into the hands of receivers, and subsequently the appellee Smith was appointed ancillary receiver. It is therefore quite clear under the facts of this case, that the appellant as vice-president, one of the directors and a large stockholder of the company, must have known the actual financial condition of the company at the date of the alleged sale of his stock. At least as one of the original parties to the notes and one of the principal officers of the company, the evidence is sufficient to charge him in law with such knowledge.

But it is admitted on the record that the reduction of the stock did not take place in accordance with the requirements of the Delaware Statute, and it will be seen that this statute does not permit a corporation to purchase its own capital stock for the purpose of reducing the same, until all the creditors of the corporation have been secured or paid in full. The alleged reduction of the capital stock of the corporation in this case then by the purchase of the shares of the appellant by the corporation, was manifestly an illegal and unenforceable transaction, because of a failure to comply with the Delaware statute, and must be so declared. Act 1903, Ch. 392, sec. 28, *Laws of Delaware; Smith on Delaware Corporations,* 69-101.

It cannot be doubted, at this date, since the decision of this Court in the case of *Maryland Trust Company* v. *Mechanics Bank,* 102 Md. 608, that in the absence of express authority, a corporation in this State, the amount of whose capital stock is fixed in its charter, has no power to purchase its own shares, either for the purpose of holding or selling them, or for the purpose of cancelling and retiring them; and that the amount of the capital stock of a corporation cannot lawfully be diminished in any other mode than that prescribed by *Code of Public General Laws,* Art. 23, secs, 82 to .87. It was further held in that case that a purchase by a company of its own shares of stock was an illegal reduction of the capital stock; and a contract by which a party lends money to a company to be used with the knowledge and as-

sistance of the lender in buying its own shares of stock is illegal, and the money so loaned cannot be recovered.

The appellant, however, does not deny the soundness of the propositions settled by the case of *Maryland Trust Company* v. *Mechanics Bank, supra,* and the cases there cited, but contends that this case does not fall within the doctrine of those cases, because as stated in his brief, first the appellant considered that he was participating in an act which if done properly, was perfectly legal, to wit, sell his stock to a solvent corporation, which under the law creating it, was able to purchase its own stock for cancellation for the purpose of reducing its outstanding issue; and secondly, by the Negotiable Instrument Act, Article 13 of the Code of Public General Laws 1904 (Acts of 1898, Ch. 119), the act of the endorsement of the notes before their delivery was a warranty by the appellees to the appellant that the maker of the notes had the capacity to contract, that they were in every respect genuine, valid and subsisting, and the appellees are estopped from denying their validity.

The fundamental error, however, of the appellant's position is, that the facts of the case do not support his contention. The appellant in this case is not a holder in due course because as one of the original parties (payee) he knew at the time of the illegal transaction of the infirmities of the notes, and of the insolvency of the company, the maker of the notes.

By sec. 47 of Art. 13, Code Public General Laws (Negotiable Instrument Act), it is provided that absence or failure of consideration is matter of defence as against any person not a holder in due course, and partial failure of consideration is a defence *pro tanto,* whether the failure is an ascertained and liquidated amount or otherwise. Secs. 71 and 74 of Art. 13, Code Public General Laws; *Bradford* v. *Harris,* 77 Md. 153; *Spies* v. *Rosenstock,* 87 Md. 16.

There is a manifest distinction between the cases cited and relied upon by the appellant's counsel, and a case such as this where the notes rest upon an illegal and void transaction,

and where there was no valid consideration to support the endorsement.

The appellant had full knowledge of, and participated in the illegal act of the company in the purchase and sale of the stock, and it is inconceivable on the record that he had not knowledge of the insolvency of the company at the time of the transaction.

All the cases distinguish between an *ultra vires* act and one that is unlawful and illegal. In certain cases an endorser may be held upon a note the consideration of which is based upon an *ultra vires* act, but a contract to do an illegal act and one against public policy is held to be a contract of "evil tendency" and unenforceable. *Emerson* v. *Townsend,* 73 Md. 224; *Hanauer* v. *Doane,* 12 Wall. 439; *Lester* v. *Howard Bank,* 33 Md. 562; *Md. Trust Co.* v. *Mechanics Bank,* 102 Md. 616; *Black* v. *Bank of Westminster,* 96 Md. 399.

The defendant's prayers were therefore properly granted, which instructed the Court, sitting as a jury, that the plaintiff had offered no evidence legally sufficient to recover against the defendants Smith and Shriver, and the verdict should be for the defendants.

There was no error in refusing the plaintiff's first and second prayers for reasons stated herein and for the further reason there was no evidence in the case legally sufficient to support the theory upon which they were based.

The judgment in favor of the defendants will therefore be affirmed.

*Judgment affirmed with costs.*