# PENINSULA TRUST COMPANY.

## *vs.*

## JAMES T. JOHNSON.

*Corporations: purchase of own stock; ultra vires.   Directors: notice.*

A corporation, with a fixed amount of capital stock, has no power to purchase its own shares, either for the purpose of holding, or selling them, or for cancelling and retiring them.

p. 539

The amount of the capital stock of a corporation can lawfully be diminished in no other way than that prescribed by the Code of Public General Laws, Article 28.          p. 539

Such purchase of its own stock by a corporation is illegal, and money loaned for such a purpose can not be recovered, if the lender had knowledge of the purpose for which it was to be used.                                    pp. 539-540

Notice communicated to, or knowledge acquired by, the officers or agents of corporations, when acting in their official capacity, or within the scope of their agency, is notice to or knowledge of the corporation for all judicial purposes.   p. 540

*Decided May 17th, 1916.*

Appeal from the Circuit Court of Baltimore City. (DOBLER, J.)

The facts are stated in the opinion of the Court.

The cause was submitted to BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Alonzo L. Miles,* on the brief, for the appellants.

*Albert A. Doub* and *George A. Finch,* for the appellees.

BRISCOE, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court of Baltimore City, passed on the 29th of December, 1915, sustaining certain exceptions filed by the appellee to the allowance of the claims of the appellant, in an auditor's account distributing the assets of the Maryland Insurance Agency Company, an insolvent corporation now in the hands of receivers.

The appellee is a stockholder of the insolvent company, and excepts to the report and auditor's account distributing its funds among the creditors of the company as set out therein, and especially to the allowance of the appellant's claims and dividends, for the following reasons:

First—For that the claims as represented by the notes filed in these proceedings are not due by the defendant company to the claimants, for that the proceeds of these notes were used by the defendant company in the purchase of its stock and for other illegal purposes, or in the liquidation of other obligations, the proceeds of which were used by the defendant company in the purchase of the stock of this corporation contrary to the laws of this State, all of which was within the knowledge of certain officers and directors of the said Peninsula Trust Company, solely and as assignee, and Alice C. Le Viness, and no amount is due upon the notes representing the claims.

Second—And for other reasons to be set out at the hearing of the exceptions.

The appellant, as its name indicates, is a duly incorporated Trust Company of Salisbury, Maryland, and was incorporated in June, 1911.

The Maryland Insurance Agency Company, a body corporate, was incorporated by the Act of 1904, Chapter 246,

and conducted a general agency insurance and brokerage business throughout the State of Maryland, with its principal office of business in the City of Baltimore. Subsequently the company became insolvent, and it was placed in the hands of receivers by a decree of court on the 13th of April, 1913.

It appears from the auditor's account distributing the assets of the company, filed on the 16th of October, 1915, that the claims and dividends of the appellant trust company were allowed as follows:

|     |                          | Claims.    | Dividends. |
|-----|--------------------------|------------|------------|
| 13. | Peninsula Trust Company.... | $  70.07  | $   9.69   |
| 14. | Peninsula Trust Company.... | 5,463.90  | 755.66     |
| 15. | Peninsula Trust Company.... | 7,193.75  | 994.90     |
| 16. | Peninsula Trust Company.... | 921.10    | 127.39     |
| 17. | Peninsula Trust Company.... | 2,223.47  | 307.50     |
| 18. | Peninsula Trust Company.... | 2,075.68  | 287.07     |
| 19. | Peninsula Trust Company.... | 5,966.06  | 825.11     |
|     |                          | $23,896.03 | $3,307.32  |

The balance in the hands of the receivers for distribution among the creditors and which was distributed in the auditor's account, as shown by the record, amounted to $5,663.84.

The debts of the company amounted to $40,953.29.

The claim of the appellant is based upon six promissory notes set out in the record, aggregating $23,414—one dated in December, 1912; three dated in January, 1913, and two dated in February, 1913, executed and delivered by the Maryland Insurance Agency Company to the appellant trust company for money borrowed and for loans made by the appellant company to the agency company.

The notes were drawn and executed as follows, on different dates and amounts:

"$5,875.00.        Baltimore, Md., Jan'y 27th, 1913.

"Four months after date we promise to pay to the order of The Peninsula Trust Company, five thousand

eight hundred seventy-five dollars, at The Peninsula. Trust Company, Salisbury, Md., with Int.

> "Maryland Ins. Agency Co.
> "Chas T. Le Viness, Jr., Pres..
> "Albert S. Gill, Sec'y.

"Value Received.
"No. 1316 Due ......
    "Renewal.                    May 27th."

Endorsed upon the back of each note was:
"Chas. T. Le Viness, Jr.
"L. W. Dorman.
"Alice H. Dorman.
    "The Peninsula Trust Company hereby assigns the within note to Alice De Le Viness without recourse.

> "The Peninsula Trust Company.
> "Per E. C. Fulton, Treasurer..

"I hereby assign the within note to the Peninsula Trust Company as collateral security to my note to said Company of Aug. 19, 1913, the said Peninsula Trust Company to collect any and all dividends that may be paid on the within note and apply the same as a credit on the note aforesaid.

> "Alice D. Le Viness."

It further appears from the record, that Charles T. Leviness, Jr., was president, and Albert S. Gill was secretary of the Agency Company, and stockholders of the company. Levin W. Dorman was president and Robert D. McCandlish was vice-president, treasurer and a director of the appellant Trust Company, and McCandlish was also a director and a stockholder of the Agency Company.

The exceptions to the appellant's claims were sustained by the Court below, and from that order this appeal has been taken.

There can be no question, it seems to us, after a careful examination of the record in this case, that the funds and money borrowed from the appellant company were obtained

and used for the purpose of retiring certain notes held by the company issued for stock and for the purpose of cancelling the stock obligations of certain stockholders who were not satisfied with the management of the company.

By a resolution of the company, passed on the 25th of January, 1911, it was resolved that the president be authorized and directed to take up and retire notes held by the company issued for stock and cancel stock if issued therefor as soon as practicable, according to proper legal methods.

Subsequently the money was borrowed from the appellant company and applied to the liquidating of certain notes and cancelling the stock subscriptions of some of the stockholders.

But it is contended that even if it be conceded that the proceeds of the notes were used to take up the notes that had been given in payment of stock, the Trust Company had no knowledge of that fact, and the exceptions to the appellant's claim should have been overruled.

The principles of law controlling a case like the present have been established by numerous decisions of this Court.

In *Burke* v. *Smith,* 111 Md. 624, we said it can not be doubted at this date, since the decision of this Court in the case of *Maryland Trust Company* v. *Mechanics Bank,* 102 Md. 608, that in the absence of express authority a corporation in this State, the amount of whose capital stock is fixed in its charter, has no power to purchase its own shares, either for the purpose of holding or selling them, or for the purpose of cancelling and retiring them; and that the amount of the capital stock of a corporation can not lawfully be diminished in any other mode than that prescribed by the Code of Public General Laws, Article 23.

It was further held in that case that a purchase by a company of its own shares of stock was an illegal reduction of the capital stock; and a contract by which a party lends money to a company to be used with the knowledge and assistance of the lender in buying its own shares of stock is illegal, and the money so loaned can not be recovered; *Schwind* v.

*Boyce,* 94 Md. 517; *Md. Trust Co.* v. *Bank,* 102 Md. 608; *Bear Creek Lumber Co.* v. *Bank,* 120 Md. 568.

In the present case, McCandlish was not only the vice-president, treasurer, director and the active banking man of the Trust Company, but was also a director and stockholder of the Agency Company. He had full knowledge and participated in the illegal acts of the company in the purchase of the stock, the loan that was made, and in all the transactions between the two companies.

It is clear, under the facts and circumstances of the case, that he had knowledge of the fact that the money was borrowed for the purpose of taking up the stockholders' notes, and this being so then it is well settled that this notice is imputable to the Trust Company.

In *Md. Trust Company* v. *Bank,* 102 Md. 630, it is said: "The most comprehensive rule with reference to this subject which can be stated is that notice communicated to, or knowledge acquired by, the officers or agents of corporations when acting in their official capacity or within the scope of their agency, becomes notice to or knowledge of the corporation for all judicial purposes." *Central Trust Co.* v. *Arctic Ice Co.,* 77 Md. 233; *Schwind* v. *Boyce,* 94 Md. 510; 10 *Cyc.* 1053-1064.

For the reasons stated the order of the Court below sustaining the exceptions and disallowing the appellant's claim will be affirmed.

*Order affirmed, with costs.*