## OKLAHOMA WHEAT POOL ELEVATOR CORPORATION v. BOUQUOT.

No. 26762.　March 30, 1937.

Rehearing Denied May 25 1937.

Roy J. Elam, Charles M. Blackmar, Ralph M. Jones, and Michaels, Blackmar, New-

kirk, Eager & Swanson, for plaintiff in error.

C. F. Dyer and Robert F. Dyer, for defendant in error.

CORN, J. This is an action upon a contract for redemption of preferred stock in the Oklahoma Wheat Pool Elevator Corporation. The following is a brief statement of the transactions out of which this litigation arose: On June 4, 1930, said corporation entered into a written contract with L. E. Bouquot, the owner of a grain elevator in the town of Vici, Okla., for the purchase of said elevator for the sum of $8,000, which consideration was payable as follows: $2,-500, in preferred stock of said corporation to be accompanied by a written agreement for redemption, and the balance of the consideration to be paid in two equal installments of $2,750 each, represented by two promissory notes, one of which was payable one year after date, and the other, two years after date, and both bearing interest at 7 per cent. per annum, payable semiannually. The preferred stock also provided for a 7 per cent. annual dividend, cumulative, and was nonassessable and nonvoting.

Pursuant to said contract the property was transferred, conveyed, and delivered by Mr. Bouquot to said corporation, and on the same date and as a part of the same transaction the certificate of stock was issued and delivered along with the redemption agreement, which was executed by the president and secretary of the corporation with corporation seal affixed. The pertinent part of the redemption agreement is as follows:

"Now, therefore, such stock or any part thereof, not less than one share, shall be subject to redemption, according to the articles of incorporation and bylaws of party of the first part. and the resolution heretofore passed by the board of directors of the party of the first part on February 7, 1929, upon demand made therefor by party of the second part in writing on or before thirty (30) days prior to May 31, 1933, and party of the first part agrees to redeem such stock on or before May 31st of any calendar year, as hereinbefore provided.

"Party of the first part agrees to pay party of the second part interest due on said stock semiannually.

"The redemption of said stock, as hereinbefore provided, shall be at par plus accrued interest."

The notes were paid in due course and the agreed 7 per cent. annual dividend, or interest, was paid on the preferred stock. Early in May, 1933, but a few days short of 30 days prior to May 31st, as provided in the redemption agreement, Mr. Bouquot addressed written demand to the corporation at its home office at Enid, Okla., to which he received a response as follows:

"The Oklahoma Wheat Pool Elevator Corporation
"Phone 3400
"P. O. Box 1016
"Enid, Oklahoma
"May 26, 1933.
"Mr. L. E. Bouquot,
"Woodward, Oklahoma.

"Dear Mr. Bouquot:

"In accordance with our promise to you May 22nd, we have submitted, to our Chicago Office, the matter of retiring your Preferred Stock.

"We quote from letter just received this morning:

"'We are complying strictly with the terms and requirements of the redemption agreements and in view of the fact that Mr. Bouquot either through inadvertence or otherwise failed to give thirty days' notice in writing prior to May 31st of this year, that he desired the redemption of his stock, it will be necessary for him to wait until the next redemption date, May 31, 1934, I think the Bank of Woodward should be notified accordingly.'

"Yours very truly,
"Oklahoma Wheat Pool Elevator Corporation
"(Signed) G. F. Sutton
"Ass't Sec'y-Treas.

"GFS :et
"c/o The Bank of Woodward
"Woodward, Oklahoma."

Thereafter, on April 4, 1934, Mr. Bouquot again gave notice of his desire to retire the stock, and in response thereto was advised by Mr. Sutton, the assistant secretary-treasurer in charge of the Enid office, that the corporation would be ready to redeem the stock on May 31, 1934, his letter being as follows:

"Oklahoma Wheat Pool Elevator Corporation
"Phone 3400
"P. O. BOX 1016
"Enid, Okla.,
"April 5, 1934
"Mr. L. E. Bouquot,
"Woodward, Oklahoma.

"Dear Mr. Bouquot:

"We have your letter of April 4, 1934, giving us notice that you desire that we retire Preferred Stock of Oklahoma Wheat Pool Elevator Corporation held by you, in accordance with Stock Redemption Agreement dated June 4, 1930.

"We shall be ready to redeem this stock on May 31, 1934.

"Yours very truly,

"Oklahoma Wheat Pool Elevator Corporation

"G. F. Sutton, Ass't Sec'y-Treas."

"GFS :et"

But notwithstanding the foregoing commitments, said corporation failed and refused to redeem the stock, and on June 27, 1934, Mr. Bouquot filed suit in the district court of Garfield county upon the redemption agreement contract, and on July 7, 1934, filed an application for and obtained a temporary injunction restraining the corporation from disposing of its common stock to the Farmers National Grain Corporation and the Farmers National Warehouse Corporation, foreign competitive corporations, whereupon said corporation deposited with the registry of the court the sum of $3,000, to be held custodia legis to abide the payment of judgment if rendered in favor of plaintiff, and without prejudice to the rights of either of the parties as to the trial of the cause on its merits. The cause was tried to the court, resulting in a judgment in favor of plaintiff in the sum of $2,500, with interest at 7 per cent. from June 1, 1933, for the reversal of which said judgment the defendant brought this appeal. Hereinafter we shall continue to refer to the parties as plaintiff and defendant in the order of their appearance in the trial court.

As a defense the defendant pleaded a want of power on the part of the corporation, under its charter and the laws of the state, to execute a valid and binding stock redemption contract. The plaintiff is claiming the status of a creditor rather than that of a stockholder.

The defendant briefs and submits its argument under five propositions, viz:

"1. Plaintiff is a stockholder of defendant and not a creditor. To hold the 'redemption' agreement enforceable in the absence of a surplus or unanimous consent of the stockholders would effect a violation of the statutes governing corporations and give plaintiff a preference over other stockholders.

"2. The agreement being in violation of public policy as declared by statute, defendant cannot be estopped from asserting its ultra vires character at any time. Plaintiff's only right by reason of his performance is to recover the benefits actually received by defendant, and it is not pleaded or proved that any benefits were received.

"3. Plaintiff cannot invoke estoppel since it is based upon defendant's retention of his property, and his own conduct in retaining the benefits received from defendant prevents it from making a restoration.

"4. Assuming the enforceability of the 'redemption' agreement, plaintiff's option was limited in time, and he failed to exercise it within the period provided.

"5. The contract upon which plaintiff has sued provided that his shares of preferred stock were subject to redemption according to (a) the articles of incorporation, (b) the by-laws of the corporation, and (c) resolution of the board of directors passed February 7, 1929. Plaintiff's proof falls far short of establishing a right in plaintiff to redemption within the terms of the contract."

The general rule for testing the powers of a corporation to make a contract has been stated as follows:

"The charter of a corporation, read in connection with the general laws applicable to it, is the measure of its powers, and a contract manifestly beyond those powers will not sustain an action against the corporation. But whatever, under the charter and other general laws, reasonably construed, may fairly be regarded as incidental to the objects for which the corporation is created, is not to be taken as prohibited." Green Bay & Minn. Ry. Co. v. Union Steamboat Co., 107 U. S. 98, 100; Derr v. Fisher, 22 Okla. 126, 98 P. 978; Oklahoma Portland Cement Co. v. Anderson, 28 Okla. 650, 115 P. 767; Overholser v. Oklahoma Interurban Traction Co., 29 Okla. 571, 119 P. 127.

Section 9730, O. S. 1931, in the sixth subdivision contains a grant of power to corporations, as follows:

"* * * And every corporation shall have power, by so providing in its articles of incorporation or an amendment, to create two or more classes of stock with such designations, preferences and voting powers, restrictions or qualifications thereof as shall be stated and expressed in the articles of incorporation or an amendment thereof; provided, that the holder of no stock shall be prohibited from voting upon all questions pertaining to the increasing of capital stock or bonded indebtedness of the corporation.

"Any and all classes of preferred stock may, if desired, be made subject to redemption at such time or times and at such prices, not less than par, as may be expressed in the articles of incorporation or an amendment thereof, and the holder of any preferred stock shall be entitled to receive and the corporation shall be bound to pay to him dividends at such rates and on such conditions and at such times as may be stated in the articles of incorporation or amendment thereof before any dividend shall be set apart and paid on the common stock; and, when any such preferred divi-

dends shall have been paid or set aside as in the articles of incorporation provided, a dividend upon the common stock may be paid out of the remaining surplus or net profits of the company. Such preferred dividends may be made cumulative and in no event shall the holder of preferred stock be personally liable for the debts of the corporation; but, in case of insolvency, its debts or other liabilities shall be paid in preference to the preferred stock."

Pursuant to the provisions of said statute, articles and amended articles of incorporation were adopted and filed. The amended articles of incorporation, which were in force at the time the contract was made, are identical with the original articles in so far as any matter involved in this action is concerned. The purposes for which the corporation was formed are set out therein as follows:

"(a) To pack, process, clean, treat, mix, store, warehouse, elevate and manufacture wheat, corn, grains, and other food products in the state of Oklahoma and elsewhere by any means and in any way whatsoever.

"(b) To acquire, buy, own, build, lease, erect and operate warehouses and elevators wherever necessary or expedient in order to store or dispose of any grains or other food products; to purchase, acquire, own, hold, lease and control any real or personal property necessary for the transaction of the business of the corporation.

"(c) To borrow money.

"(d) To buy, or otherwise acquire, and to own, operate, mortgage, lease, sell, erect or otherwise dispose of, any and all kinds of property, real, personal or mixed, or any interest therein, or to any extent, and to contract for the purchase, sale, disposal, lease or rental of any such property, for the purpose of furthering any of the general aims of this corporation.

"(e) To acquire, hold, guarantee the payment of, pledge, or otherwise contract with reference to, or to sell or otherwise dispose of, shares, bonds, obligations or other securities of this corporation or of any other corporation, firm or individual.

"(f) To contribute in any manner to the expenses of promoting, constructing, acquiring, improving or maintaining any work or enterprise by whomsoever owned, within the general purposes of this corporation.

"(g) To make contracts of any kind relating to any of the said property or business, in either an independent or representative capacity.

"(h) To promote, do, acquire, hold and dispose of anything incident to, or necessary, convenient or proper to carry out any of the things or purposes aforesaid, or which from time to time may be declared by the Board of Directors of this corporation, then in office, to be necessary, useful, incident or auxiliary, to accomplish any of the purposes of the corporation or to promote its welfare.

"(i) To conduct public warehouses and elevators under and according to the statutes of the state of Oklahoma and in compliance with all of the state or federal rules or regulations.

"(j) To do any one or more of said things in any part of the world."

The amount of capital stock was fixed at $500,000, and divided into 5,000 shares of the par value of $100 each, of which 4,800 were preferred, and 110 were common capital stock. The common stock could be sold or issued only to the Oklahoma Wheat Grower's Association or to members of said association. The preferred stock could be sold or issued to any person, firm, or corporation, but it had no voting power, except as required by law. Thus, the purpose was to keep the control of the corporation in the hands of the Oklahoma Wheat Grower's Association and its members. The preferred capital stock was to bear and receive 7 per cent. annual, cumulative dividends, and the holders of preferred stock were to take no loss except in case of insolvency, in which event the assets were to be applied to the preferred stock before the common stock is permitted to participate; and was subject to redemption in accordance with the following provision:

"All or any part of the preferred capital stock of the corporation shall be subject to redemption at par plus accrued interest in such amounts, order and at such times as the then acting board of directors of this corporation shall, in their conclusive discretion, deem necessary and proper and notice of such redemption shall be given by the secretary, or any other duly authorized officer of this corporation to the holders of such preferred capital stock by letter addressed to such stockholder at his last known residence as is disclosed by the records of this corporation and such notice shall be given at least thirty (30) days prior to the fixed redemption date unless waived by said stockholder.

"In the event of the dissolution or division of the assets of this corporation for any reason whatsoever the holders of preferred capital stock shall be paid the full par value of their stock with accumulated dividends before anything whatsoever shall be paid to the holders of common stock."

The by-laws of the corporation give the directors power "to incur indebtedness for the conduct of the business of the corpora-

tion, the terms and account of which shall be entered on the minutes of the board. The president, or vice president or general manager, and the secretary, or assistant secretary, shall sign officially all written promises to pay debts."

On February 7, 1929, at a meeting of the board of directors a resolution was adopted "to permit the president and secretary to enter into a special agreement with large investors of Pool Elevator preferred stock whereby the Pool Elevator Corporation agrees to fix the terms and date of redemption."

And on June 4, 1929, the board of directors again adopted, verbatim, the resolution of February 7, 1929, supra, and at the same meeting adopted 'a resolution authorizing and empowering John Manley, secretary-treasurer, manager, of the corporation, on its behalf:

"1. To make 'application for loans from banks.

"2. To execute and deliver and guarantee to banks the credit instruments and endorsements required by banks.

"3. In his discretion to pledge and hypothecate with banks any additional securities which may be required by banks, and he is further authorized and empowered to do such acts and execute such additional agreements or endorsements under the seal of this corporation as may be necessary or desirable to meet the terms, conditions and requirements of banks."

In view of the foregoing it is obvious that the charter provisions, the by-laws, and the action of the board of directors pursuant thereto, clothed the corporation and its officers with 'ample power to execute a valid stock redemption contract. But the defendant contends that said redemption agreement was violative of the public policy as expressed in section 9747, O. S. 1931, which is as follows:

"A corporation may purchase, hold and transfer shares of its own stock, from its surplus profits, or by the unanimous consent in writing of all its stockholders, in such manner and for such price or consideration as the said stockholders may unanimously decide upon."

The contention is that the corporation had no surplus with which to redeem, or to purchase said stock, and could not do so in the absence of the unanimous consent in writing of all its stockholders.

That section of the statute must be read and construed in connection with section 9730, supra, a later statute, which confers upon corporations the very power under consideration, by expressing the same in the articles of incorporation or an amendment thereto, and as we have shown above, said corporation accepted such power by an 'appropriate provision in its articles of incorporation and in the amendment thereto. Therefore, section 9747, supra, is not applicable, and cannot be made to apply where the articles of incorporation of the corporation, or an amendment thereto, contains such provision.

It is worthy of note also that the preferred stockholders were excluded from any participation in the management and control of the corporation, the preferred stock being nonvoting stock, and that the provision in section 9747, supra, requiring the unanimous consent in writing of all stockho'ders renders it inapplicable to the case at bar.

Having thus concluded that the corporation had the power to execute the redemption agreement, we now come to the consideration of the effect of said agreement with reference to the status of the plaintiff as a stockholder or a creditor.

The characteristics of preferred stock which give the holder the status of a creditor are discussed in Best v. Oklahoma Mill Co., 124 Okla. 135, 253 P. 1005. The certificate of preferred stock involved in that case contained an absolute and unconditional promise of the corporation to redeem the stock on a certain date at par value with cumulative dividends, and this court held that it gave the holder the status of a creditor rather than that of a stockholder. The question being throughly discussed in that case, it would be useless repetition to further discuss it here. We adopt the syllabus of said case as 'a part of this opinion.

In view of the facts and circumstances and the evident intent of the parties as expressed by the redemption agreement executed and delivered contemporaneously with the stock certificate, we conclude, and hold, that the plaintiff is a creditor and not a stockholder.

In the case of Oklahoma Natural Gas Corp. v. Douglas, 170 Okla. 284, 39 P. (2d) 578, in a suit to recover the purchase price of certain stock sold by the corporation with a contemporaneous parol contract to redeem the stock at the option of the stockholder, this court 'affirmed the judgment of the trial court enforcing the parol contract to redeem the stock at the contract price,

and held such contract to be valid, binding, and enforceable against the corporation.

The judgment of the trial court in the case at bar should be, and is hereby, affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and PHELPS and GIBSON, JJ., concur.