KRAFT ET AL. *v.* ROCHAMBEAU HOLDING
COMPANY, INC.

[No. 198, October Term, 1955.]

*Decided June 15, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Arold H. Ripperger* and *Abram C. Joseph* for appellants.

*J. Wallace Bryan* and *Justinius Gould* for appellee.

HENDERSON, J., delivered the opinion of the Court.

By bill of complaint filed April 1, 1955, the appellants sought to require the appellee, a Maryland corporation, to redeem its entire issue of perferred stock held by the appellants. After a demurrer to the bill was overruled, the appellee filed an answer to which the appellants demurred. The case was submitted upon bill and answer and demurrer to the answer, and after argument the demurrer was overruled and the bill dismissed.

The appellee was incorporated on May 20, 1952, primarily to acquire the Rochambeau Apartments, at Charles and Franklin Streets, Baltimore, from the Rochambeau Company, Inc. This apartment property had been operated by the seller, which by 1951 was in serious financial difficulties. The property was subject to three large mortgages, all in default, State and City taxes for 1950 and 1951 were unpaid, and there were substantial unsecured debts and claims. Negotiations eventuated in an agreement dated August 23, 1951, for a sale at a price of $400,000.00, to a corporation "to be formed," and a supplemental agreement of the same date whereby the seller and others agreed to subscribe to $50,000.00 of appellee's nonvoting, redeemable preferred stock, which was to "become due and payable" at the expiration of five years from the settlement date.

The sale was consummated as of May 20, 1952. A $250,000.00 purchase money mortgage, repayable with interest in equal installments over fifteen years, was procured for appellee by the seller from American National Building and Loan Association, as provided in the agreement. Appellee contributed $91,200.00 obtained by sales of its common stock for cash at par. This money, after down payments of $96,500.00, was applied in the amount of $243,500.00 to the three defaulted mortgages, State and City taxes for 1950, 1951 and 1952, a lien of $78.56 held by the Collector of Internal Revenue, and other items, leaving a balance of $56,141.19 due the seller. Against this, the $50,000.00 preferred stock sub-

scription was credited, and the shares were issued by the direction of the seller and others to the appellant, Anna M. Kraft, 272 shares, William D. Lilly and wife, 170 shares, and Mrs. Marie Codd Cook (since deceased), 58 shares, in settlement of their respective claims against the seller as creditors. Presumably the balance of $6,141.19 was paid in cash. The seller was later dissolved. In practical effect the transaction was a complete refinancing of the property, with $91,200.00 of new money supplied by the common stockholders of the appellee.

On taking over the property, appellee found that extensive repairs and replacements were necessary, including replacement of the elevator, at a cost of $15,000.00, which in August, 1952, was condemned by the Building Engineer of Baltimore as unsafe because of structural defects. Earnings from the property have never been more than enough to cover operating expenses, taxes, interest and current obligations, and appellee has been forced at times to borrow money to meet current expenses.

The non-voting preferred stock, issued and outstanding in the amount of $50,000.00, contained the following provision quoted from the Articles of Incorporation: "The Corporation shall redeem 10% of the original preferred stock issue, at $100.00 per share for each share thereof, at any time during the first year of its corporate existence; and it shall further redeem an additional 10% of said original preferred stock issue at $100.00 per share at any time during the second year of its corporate existence; and it shall further redeem the balance of 80% of the original preferred stock issue during the third year of its corporate existence at $100.00 per share. The redemption price shall include all dividends thereon accrued."

A dividend of 3% for the six months period ending November 20, 1952, was declared and paid in 1953. This was the only payment of dividends and none of the preferred stock has been redeemed. The appellants contend that there is an obvious default in the obligation to redeem, which a court of equity should enforce. The appellee contends, and the Chancellor agreed, that the redemption clause is invalid and un-

enforceable under the circumstances of this case. It was alleged in the answer that at no time has the appellee "had cash or other available assets for redemption of any of its preferred stock without rendering it unable to meet its debts as they mature in the usual course of business."

Code (1951), Art. 23, sec. 14 (a), as enacted by Acts of 1951, ch. 135, provides that "Every corporation of this State by its charter may provide: * * * (5) That one or more classes of stock, as specified, may be redeemed at the option of the corporation or of the holders of such stock and the terms and conditions of redemption. * * * (9) Other preferences, rights, restrictions and qualifications not inconsistent with law."

Sec. 28 provides: "(a) Any corporation of this State may, from time to time, subject to the limitations contained in this section: (1) Redeem shares of its stock subject to redemption * * * in accordance with the applicable charter provisions; * * * (b) (3) (as amended by Acts of 1953, ch. 405, 1956 Supp., p. 148). Except in case of acquisitions pursuant to the preceding paragraphs (a) (3), (b) (1) and (b) (2) of this section, no corporation may acquire by purchase or redemption shares of its own stock except out of surplus. (c) No corporation of this State may redeem or acquire for value any shares of its own stock when it is insolvent or when the effect of such redemption or acquisition would be to render it insolvent. For the purposes of this section, a corporation shall be deemed to be insolvent if its debts exceed its assets taken at a fair valuation *or if it is unable to meet its debts as they mature in the usual course of business.*" (italics supplied)

Sec. 28 (e) and sec. 58 (a) (2) provide, in effect, that shareholders whose shares are acquired contrary to the above provision, and directors who authorize such illegal acquisition, shall be personally liable to the corporation or its receiver to the extent that the consideration so paid is in violation thereof.

The provisions of sec. 28 (c) are clear and unambiguous. It has long been the law of Maryland that the amount of the capital stock of a domestic corporation cannot lawfully be

diminished in any other mode than that prescribed by the General Assembly, and that, in the absence of express authority, a Maryland corporation has no power to purchase its own shares. *Md. Trust Co. v. Mechanics' Bank,* 102 Md. 608; *Burke v. Smith,* 111 Md. 624; *Peninsula Trust Co. v. Johnson,* 128 Md. 535. In *Heller v. Marine Bank,* 89 Md. 602, relied on by the appellants, the Maryland law at that time provided that preferred stock should constitute a lien on the corporate property and be preferred over any subsequently created mortgage or other encumbrance. It was held that the preferred stockholders were not general creditors, but were entitled to a statutory lien on fixed assets. This law was subsequently changed by Acts 1908, ch. 240. The 1951 amendments, made as a result of a careful study by a Commission on Revision of the General Corporation Laws, had the effect of narrowing still further the status of a preferred stockholder, as against creditors. See *Brune, Maryland Corporation Law & Practice* (Rev. ed.), § 49 & § 74. The rule laid down in the present Maryland statute is generally supported by the authorities in other states. See Note 88 *A. L. R.* 1131, collecting the cases, and 11 *Fletcher, Corporations,* p. 762.

The appellants do not seriously challenge the meaning or effect of the Maryland statute, but assert that they were in fact creditors. We find no merit in the contention. The charter of the corporation set up the preferred stock as a part of the authorized capital, with cumulative dividends at 6%, payable out of surplus or net profits. Moreover, the consideration for the issuance of the preferred stock was the payment of a part of the purchase price to the seller, which in turn assigned the stock, or designated that it be issued, to its creditors. The holders surrendered their claims as creditors of the seller in exchange for stock in the new enterprise. The fact that the charter called for redemption did not constitute the holders creditors. *Heller v. Marine Bank, supra; Hazel Atlas Glass Co. v. Van Dyk & Reeves,* 8 F. 2d 716; *Hurley v. Boston R. Holding Co.,* 54 N. E. 2d 183 (Mass.); *In re Culbertson's,* 54 F. 2d 753 (CCA 9th); *Ellsworth v. Lyons,* 181 F. 55 (CCA 6th). The obligation to redeem was at all times subject to the implied condition that it would not render the corporation

insolvent in the sense that it would be unable to meet its debts as they mature in the usual course of business.

We need not review all of the authorities relied on by the appellants. In some, the decisions turned on questions of tax deduction, as in *Commissioner of Internal Revenue v. Proctor Shop*, 82 F. 2d 792 (CCA 9th). In others, there was either no question raised, or there was no proof, that the proposed redemption would result in insolvency. Cf. *Bowersock Mills & Power Co. v. Commissioner of Int. Rev.*, 172 F. 2d 904 (CA 10th), *Oklahoma Wheat Pool Elevator Corp. v. Bouquot*, 68 P. 2d 97 (Okla.), and *Koeppler v. Crocker Chair Co.*, 228 N. W. 130 (Wis.). In the instant case the Chancellor reviewed the Auditor's reports filed as exhibits with the answer, and stated that even though the preferred stock might be redeemed without rendering the corporation insolvent in the sense that its assets would still exceed its liabilities, if the values shown could be realized, "the accountants' reports fully support the allegations of the answer that at no time since its incorporation, has the Company had cash or other available assets sufficient to redeem its preferred stock without rendering it unable to meet its debts as they mature in the usual course of business. This conclusion is not controverted by the complainants." The latest statement showed as of April 30, 1955, current assets of $3,391.85, as against current liabilities of $41,552.37. Total available cash on hand was only $1,420.83, being the excess of receipts over disbursements.

We find no merit in the appellants' contention that the statements reflect book values rather than real values, allocate an excessive amount to depreciation, and show an attempt to denude the corporation of cash by unnecessary repairs and improvements. There is nothing on the face of the pleadings to support the argument, which also proceeds on the false assumption that asset value is the only statutory test of insolvency, which is clearly expressed in the alternative. The argument that the corporation should borrow money to redeem the preferred stock is likewise without merit, since it would have the effect of reducing the capital represented by stock, and the burden of increased debt would still further impair its ability

to meet maturing obligations. In any event, the short answer is that the facts are settled by the pleadings. *Kraft v. Building Assn.,* 165 Md. 570, 571. We think the decision of the Chancellor was correct and that it should be affirmed.

*Decree affirmed, with costs.*