# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

| | | |
|---|---|---|
| **DAVID McALISTER,** | ) | |
| | ) | |
| Plaintiff/Appellee, | ) | Shelby Equity No. 105879 |
| | ) | |
| **vs.** | ) | |
| | ) | Appeal No. 02A01-9610-CH-00262 |
| **PEREGRINE ENTERPRISES, INC.,** | ) | |
| **formerly known as EMPIRE** | ) | |
| **ENTERPRISES, INC.,** | ) | |
| | ) | |
| Defendant/Appellant. | ) | |

**FILED**

**December 4, 1997**

**Cecil Crowson, Jr.**

**Appellate Court Clerk**

APPEAL FROM THE CHANCERY COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE

THE HONORABLE D. J. ALISSANDRATOS, CHANCELLOR

For the Plaintiff/Appellee:

David M. Dunlap
Memphis, Tennessee

For the Defendant/Appellant:

Michael A. Robinson
James S. Strickland, Jr.
Memphis, Tennessee

**REVERSED AND REMANDED**

HOLLY KIRBY LILLARD, J.

CONCUR:

W. FRANK CRAWFORD, P.J., W.S.

DAVID R. FARMER, J.

**OPINION**

This suit involves an action for the redemption of preferred stock. The trial court found that the stock could be redeemed even though the redemption would render the corporation unable to pay its debts in the normal course of business. We reverse and remand.

In 1992, in an attempt to increase its capitalization Defendant/Appellant Peregrine Enterprises, Inc. ("Peregrine"), a Tennessee corporation, authorized the designation of two series of preferred stock and the private placement of 520,000 shares of common stock. Peregrine's Restated Charter indicates that Series A Preferred Stock ("Series A stock") is cumulative and convertible and has priority over all other equity securities. At the time of this suit, Peregrine had 2000 shares of Series A stock outstanding with a par value of $100.00 per share.

Shareholders of Series A stock, as well as Peregrine, retained redemption rights in the stock. To exercise this option, Series A Shareholders were required to provide notice within six months plus thirty days from the final closing of the offering of the common stock. Plaintiff/Appellant David McAlister ("McAlister") held 1000 shares of Series A stock.

The offering of the common stock was apparently unsuccessful. McAlister timely gave notice of his intent to exercise his right of redemption. Peregrine refused this request on the grounds that: 1) the right of redemption was conditioned on the successful offering of the common stock; and 2) redemption would make the corporation unable to pay its debts as they become due in the usual course of business and, thus, is barred by Tennessee Code Annotated § 48-16-401 (1995). McAlister then filed this lawsuit, seeking damages for Peregrine's refusal to redeem the stock.

McAlister filed a motion for summary judgment, arguing that McAlister had an undisputed contractual right to demand redemption of the stock. Peregrine's response included the affidavit of its Chief Executive Officer, Charles Beech. Beech indicated that Peregrine had sought to raise $1.3 million through the offering of common stock, but instead raised only $275,000. Beech stated that, if Peregrine redeemed McAlister's stock, Peregrine would be unable to pay its debts in the normal course of business. Peregrine argued that McAlister's right of redemption was conditional upon a successful offering of the common stock, and that, under Tennessee Code Annotated § 48-16-401(c)(1), redemption is not permitted if it renders the corporation unable to pay its debts.

The trial court found that Tennessee Code Annotated § 48-16-401(c) did not prohibit the redemption of McAlister's stock. It also rejected Peregrine's argument that, under the Restated Charter, the failure to fund the escrow account through the common stock offering prohibited

redemption. Therefore, the trial court granted McAlister's motion for summary judgment. From this order, Peregrine now appeals.

On appeal, Peregrine asserts that redemption was contingent upon the successful placement of the common stock, and that Tennessee Code Annotated § 48-16-401 prevents such a redemption because it will jeopardize the interest of creditors.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.03. Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *Id.* Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *Id.*

Peregrine first contends that McAlister's redemption rights were conditioned on the success of the common stock offering. In support of this assertion, Peregrine cites the "understanding" of the parties, the fact that the redemption period is determined by the final closing of the common stock offering, and the fact that the funds for the Series A stocks' redemption were to come from an escrow account consisting of proceeds of the successful common stock offering. Peregrine maintains that Peregrine therefore cannot redeem the stock since the common stock placement was unsuccessful and, as a result, the escrow account was not funded.

Peregrine also argues that a provision in the Restated Charter indicates that redemption cannot be mandated. This provision states:

> (c) <u>Failure to Effect Redemption</u>. In the event that the Corporation fails to timely make any payment in connection with a properly requested Mandatory Redemption, dividends (and interest thereon, if any) shall continue to be payable on the Series A Preferred Stock as provided for in Section 3 above.

Peregrine contends that this provision demonstrates that Series A stockholders cannot force a redemption, but that they will continue to receive accrued interest and cumulative dividends.

To determine this issue, we must review the "entire contract" according to its "plain terms." *Cocke County Bd. of Highway Comm'r v. Newport Utilities Bd.,* 690 S.W.2d 231, 237 (Tenn. 1985). The language relied upon by Peregrine simply does not prohibit McAlister from demanding the mandatory redemption of his stock. We affirm the trial court's determination of this issue.

2

Nevertheless, Peregrine argues that Tennessee statutes prohibit the mandatory redemption of McAlister's stock when the redemption would render the corporation unable to pay its debts in the normal course of business, citing Tennessee Code Annotated § 48-16-401(c).

Title 48 of the Tennessee Code governs corporations and securities. Section 48-16-401 addresses "distributions to shareholders." Section 48-11-201(8) (1995) defines "distribution" as follows:

> "Distribution" means a direct or indirect transfer of money or other property (except its own shares) or incurrence of indebtedness . . . by a corporation to or for the benefit of its shareholders in respect of any of its shares. A distribution may be in the form of a declaration or payment of a dividend; a purchase, *redemption*, or other acquisition of shares; a distribution of indebtedness . . . or otherwise.

(emphasis added). Therefore, the term "distribution" includes the redemption of stock.

McAlister argues that Section 48-16-401(f) sanctions the redemption. This provision states:

> A corporation's indebtedness to a shareholder incurred by reason of a distribution made in accordance with this section is at parity with the corporation's indebtedness to its general, unsecured creditors except to the extent subordinated by agreement.

Tenn. Code Ann. § 48-16-401(f). Thus, McAlister argues that once his request for redemption was delivered, he had the same status as a general, unsecured creditor.

Peregrine notes that this provision refers to a distribution "made in accordance with this section." *Id.* Tennessee Code Annotated § 48-16-401(c)(1) states:

> (c) No distribution may be made if, after giving it effect:
>
> (1) The corporation would not be able to pay its debts as they become due in the usual course of business; . . .

For the purpose of determining whether the trial court correctly granted McAlister's summary judgment, we accept as true Peregrine's assertion that Peregrine would not be able to pay its ordinary debts to its creditors if it redeems McAlister's shares. McAlister contends that this statute only contemplates voluntary distributions as opposed to distributions mandated by contract. In interpreting statutes, the Tennessee Supreme Court recently reaffirmed that "courts are restricted to the 'natural and ordinary' meaning of a statute unless an ambiguity necessitates resorting elsewhere to ascertain legislative intent." *Westland West Community Assoc. v. Knox County,* 948 S.W.2d 281, 283 (Tenn. 1997). On their face, neither Section 48-16-401 or Section 48-16-103(b) distinguish between voluntary distributions and distributions mandated by contract. McAlister can point to nothing indicating such a legislative intent. Indeed, the purpose of this statute appears to be to

3

protect creditors. McAlister has failed to articulate any sound basis for making a distinction which endangers creditors' interests in the event of contractual rights vested in holders of equity instruments. This interpretation would clearly work to the detriment of creditors.

Other states have concluded that a preferred shareholder may not enforce a redemption contract if such redemption would render the corporation insolvent. In *Rider v. John G. Delker & Sons Co.,* 140 S.W. 1011 (Ky. App. 1911), the court considered whether a preferred shareholder could enforce a redemption contract when the corporation was insolvent. Refusing to enforce the contract, the court stated, "[i]t is only in cases where the corporation is solvent and the rights of creditors will not be injuriously affected thereby that agreements as to preferences among themselves may be enforced." *Id.* at 1012.

Kentucky considered this issue again in *Westerfield-Bonte Co. v. Burnett*, 195 S.W. 477 (Ky. App. 1917). The court reasoned as follows:

> [T]here does not appear any sufficient reason why [a preferred shareholder seeking to enforce a redemption contract] should not be treated as a creditor, where he has a demand against the corporation, which can only be enforced as a debt. It is only where the carrying out of an agreement made between the stockholders and the corporation will injuriously affect the rights of the creditors of the corporation that the agreement becomes in contravention of a sound public policy.

*Id.* at 480. The court reiterated:

> A judgment should not be rendered, by which any of the assets of a corporation are appropriated to the payment of any claim of a stockholder growing out of a contract for a preference among the stockholders, if such appropriation would endanger the collection of corporate debts.

*Id.* at 481. The Kentucky court concluded in *Westerfield-Bonte* that the redemption contract should be enforced since the corporation failed to demonstrate that the creditors' interests would be endangered. *Id.* at 481-82. *See also Gunther Grocery Co. v. Hazel,* 201 S.W. 336 (Ky. App. 1918); *In re Phoenix Hotel Co.,* 13 F.Supp. 229 (D. Ky. 1935).

The Ninth Circuit reached the some conclusion in *In re Culbertson's*, 54 F.2d 753 (9th Cir. 1932). Applying Washington law, the court found that a preferred shareholder does not become a creditor simply due to a right of redemption. *Id.* at 757. The court held that redemption could not be mandated since the corporation would become insolvent. *Id.* at 760.

In a similar case Maryland found that the corporation's "obligation to redeem was at all times subject to the implied condition that it would not render the corporation insolvent in the sense that it would be unable to meet its debts as they mature in the usual course of business." *Kraft v.*

4

*Rochambeau Holding Company, Inc.,* 123 A.2d 287, 290 (Md. App. 1956). Other states are in accord. *See, e.g., Browder v. Mutual Tool & Die, Inc.,* 263 N.E.2d 785 (Ohio App. 1970); *Hurley v. Boston R. Holding Co.,* 54 N.E.2d 183 (Mass. 1944); *Booth v. Union Fibre Co.,* 171 N.W. 307 (minn. 1919); *Koeppler v. Crocker Chair Co.,* 288 N.W. 130 (Wis. 1929); *See also* Annotation, *Rights of Creditors of Corporation with Respect to its Purchase or Acquisition of its own Stock*, 47 A.L.R.2d 758, 792-795, § 16 (1956); 18A Am. Jur. 2d *Corporations* § 547 (1985); 11 Fletcher's Cyclopedia Corporations *Stock and Stockholders* § 5310 (1995).

In this case, we find that Tennessee Code Annotated § 48-16-401(c)(1) prohibits the redemption of McAlister's stock if doing so would render the corporation unable "to pay its debts as they become due in the usual course of business. . . ." Therefore, the trial court's grant of summary judgment in favor of McAlister must be reversed, and the matter remanded for further proceedings.

The decision of the trial court is reversed and remanded for further proceedings consistent with this Opinion. Costs on appeal are taxed to Appellee, for which execution may issue if necessary.

_____
**HOLLY KIRBY LILLARD, J.**

**CONCUR:**

_____
**W. FRANK CRAWFORD, P. J., W.S.**

_____
**DAVID R. FARMER, J.**

5