# MONTROSE PERPETUAL BUILDING· ASSOCIATION

## *vs.*

## GEORGE W. PAGE, Receiver.

### *Ultra Vires Contract—Effect of Execution.*

The purchase by a building association of stock in a bank *held* to be clearly in excess of the charter powers of the association. p. 635

Although the capital of a building association was diverted from the objects contemplated by its charter, by reason of the investment thereof in the stock of a bank, yet such *ultra vires* transaction having been completely executed on both sides, the association was not entitled to recover from the receiver of the bank the funds so diverted. pp. 636, 637

*Decided June 26th, 1923.*

Appeal from the Circuit Court of Baltimore City (CARROLL T. BOND, J.).

Petition by the Montrose Perpetual Building Association of Baltimore City against George W. Page, receiver of the Lafayette Bank. From a decree for defendant receiver, petitioner appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, and OFFUTT, JJ.

*Joseph C. France,* for the appellant.

*Samuel J. Fisher,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

The controversy in this case relates to the ownership of certain shares of the stock of the appellee bank, alleged to have been subscribed for by the appellant building association, but disputed by them.

The appellant is a corporation duly incorporated on the 23rd of September, 1908, for the purpose of a building association and doing business in Baltimore City.

The defendant, the Lafayette Bank, is a corporation organizzed under the State banking law, on the 22nd day of November, 1920. It appears that the affairs of the bank were placed in the hands of the bank commissioner, the appellee, as receiver, on the 28th of November, 1921.

A petition is filed by the Montrose Perpetual Building Association of Baltimore City in the receivership proceedings, whereby it is charged, first, that, so far as concerns the 3,367 shares of the bank stock, purporting to be a subscription by and charged at $40,404 against the securities of the association under the circumstances recited in the petition, the transaction was alleged and was beyond the powers of the association, was unauthorized and fraudulent, and was duly repudiated within a reasonable time after the facts became known, and, second, that so far as concerns the remainder of the $120,000 of the association's mortgages (including in said remainder the $50,000 of mortgages so retained by the bank as collateral for the ostensible loan of the same amount and on which the receiver is now claiming a balance of approximately $5,000), the transaction was unauthorized and can have validity only (and at most) to the extent that any money advanced against said mortgages was actually used to pay off the withdrawing free shareholders of the association.

The prayer of the petition is:

First, that the building association be declared to be a general creditor of the Lafayette Bank, and that the alleged stock subscription made in your petitioner's name, may be declared a nullity and decreed to be a general creditor of the bank to the amount thereof, viz.: $40,404.

Second, that an accounting may be had showing the extent to which the securities of your petitioner over and above said sum of $40,404 were used to pay the stock subscription to the bank of the association's withdrawing shareholders; that to the extent of the balance, if any, your petitioner may be decreed to be a creditor of the bank; that the claim of the receiver against your petitioner for approximately $5,000 as the balance due on said alleged loan of $50,000 may be rejected, except in so far as it may represent money paid to withdrawing shareholders of the association; and that the receiver may be restrained from attempting to collect said sum from your petitioner until the further order of the court and upon such indemnity, if any, as the court may deem proper to order.

Third, that of the assets of the bank as yet undistributed, the receiver may be directed to hold sufficient to satisfy the claim of your petitioner.

Fourth, that your petitioner may have such other and further relief as its case may require.

The defendant, the receiver of the Lafayette Bank, fully answered the petition, and in the third paragraph "demurs to the whole petition, (a) because the petitioner has stated nothing in the petition which entitles it to any of the relief prayed therein; (b) because there is nothing stated in the petition which would warrant this Court in declaring the petitioner's subscription to the stock of said Lafayette Bank a nullity: (c) because there is nothing stated in said petition which would warrant this honorable Court in declaring that the subscription to said stock was *ultra vires* the association: (d) because there is nothing stated in said petition which would warrant this honorable Court in declaring that the subscription to said stock was unauthorized; (e) because there is nothing stated in said petition which would warrant this honorable Court in granting the petitioner an accounting as prayed in the second paragraph for relief; (f) because said petition shows that the building association has been

guilty of unreasonable delay, after knowledge of the circum-
stances and is guilty of laches."

The case was heard upon the petition, answer and proof,
and from a decree of the Circuit Court of Baltimore City dis-
missing the plaintiff's petition and claim, this appeal has been
taken.    The appellant contends that the transaction whereby
the building association became the owner of the bank stock
was illegal, *ultra vires,* and without authority, and that any
attempt by the building association as such to purchase the
bank stock was *ultra vires* the building association.

The contention on the part of the receiver bank is thus
stated in its brief: (a) that all of the active directors of the
building association knew that it was purchasing this stock
as such and paying the full subscription in cash in order to
enable the bank to open immediately after the Metropolitan
branch closed—not necessarily with the idea of retaining any
part of said stock, but with the intention of disposing of as
much as possible to its free share holders and the balance to
others, and they knew of the various transactions that were
taking place between the organizers of the bank and the
building association in order to obtain the permission of the
bank commissioner to begin business; that although Messrs.
Neale and Hayden attended to the details, it was with the
knowledge and approval of the other directors of the building
association; (b) that if the transaction was *ultra vires* it is
a closed one, and therefore will not be set aside; (c) that if
the building association is correct in contending that it did
not as such purchase any of the bank's stock, its participation
through the agency of its directors in the circumvention of
the requirements of the State banking law made it a party to
an illegal transaction, which prevents a court of equity from
granting any relief, and even if it be conceded, as contended
by the appellant, that Neale and his associates on the board
of the building association were using its funds to help or-
ganize the bank of which they were to be officers and direc-
tors, the building association is nevertheless charged with
their knowledge and bound by their action in the premises.

The record, it will be seen, is quite a voluminous one, but in the view we take of the case, it will not be necessary to review it in detail.

The purchase of the bank stock by the building association, in excess of the amount subscribed for by its free shareholders, was clearly in excess of its charter powers, and the transaction was therefore *ultra vires.*

By section 6 of the constitution of the association, it is provided that the directorate shall have power, at any regular meeting, upon a three-fourths vote, to negotiate temporary loans for the purpose of completing loans made to members or paying withdrawn shares.

By the second section of the certificate of incorporation, it is provided that the purpose for which the corporation is formed and the business or objects to be carried on and promoted by it are: The accumulation of capital to enable its members to procure loans to purchase real or leasehold property and erect buildings thereon within the State of Maryland; to purchase or improve real or leasehold property; to sell or rent the same to its members or others; and to afford its members an easy manner for accumulating their savings, etc., etc.

The proof shows that the Montrose Perpetual Building Association sold to the Lafayette Bank seventy thousand dollars worth of mortgages outright and borrowed in its own name twenty-five thousand dollars, and through the Pilgrim Building Association, twenty-five thousand dollars, making one hundred and twenty thousand dollars, in all. As security for these loans, the association hypothecated with the bank mortgages aggregating $55,176.33.

The proceeds of these transactions, it appears, were used in the purchase of 3,367 shares of the Lafayette Bank stock in its own name and 663 shares in the name of some of its depositors.

While it is clear that the capital of the building association was diverted from the objects contemplated by its charter and chartered purpose, yet, the transaction in controversy

having been completely executed on both sides, the contract will not be disturbed.

In 14A *Corpus Juris,* section 2168, it is said, "the general rule is that *ultra vires* transactions are recognized as unassailable and are permitted to stand as the foundation of rights acquired under them after they have been fully performed on both sides. Where the parties are in *pari delicto* such transaction will not, as a general rule, be set aside because of want of corporate authority to make it. A frequently repeated judicial doctrine is that the executed dealings of a corporation must be allowed to stand for and against both parties, where the plainest rules of good faith require it." See *St. Louis, etc. R. R. Co.* v. *Terre Haute,* 145 U. S. 393; *Central Transportation Co.* v. *Pullman's Palace Car,* 139 U. S. 24; *Louisville, etc. Rwy. Co.* v. *Louisville Trust Co.,* 174 U. S. 571.

In *Alabama Consolidated Coal Company* v. *Baltimore Trust Co.,* 197 Fed. 347, it is said: "If such a contract has been completely executed on both sides, the courts will ordinarily refuse any relief to either. The usurpation is at an end. Each party has received from the other what he bargained for. Neither of them has any cause to complain. The contract has ceased to be a living thing. The courts will leave it in its grave."

In *Holmes, etc. Mfg. Co.* v. *Holmes, etc. Metal Co.,* 127 N. Y. 269, the Court of Appeals of New York said: "But assuming the transaction to have been *ultra vires,* the defenses interposed would still be unavailable. The plaintiff has the stock and has paid for it. It cannot be recovered back by the defendant for the transaction is completed and closed. Whilst the contract remained executory, if it was unauthorized, a stockholder or person interested might have interfered by injunction, and prevented the transfer of the property of the plaintiff to the defendant. But the contract having become executed, the title of the stock now vests in the plaintiff and it has power to sell and dispose of the same."

In *West. Md. R. Co.* v. *Blue Ridge Co.*, 102 Md. 333, this Court said: "Parties may be estopped in some cases from disputing the validity of a corporate contract when it has been fully performed on one side and when nothing short of enforcement will do justice. To quote the language of Comstock, C. J., in *Parish* v. *Wheeler*, 22 N. Y. 508, 'the executed dealings of corporations must be allowed to stand for and against both the parties when the plainest rules of good faith so require.'" *United German Bank* v. *Katz*, 57 Md. 128; *Black* v. *Bank of Westminster*, 96 Md. 429.

The testimony shows that the directors of the building association knew that they were purchasing the bank stock and was paying the full subscription therefor in cash. Most of the directors were present when the resolutions were passed, and those who were absent had knowledge of the transaction. 2nd *Comyn on Contracts*, 361; *Peninsula Trust Co.* v. *Johnson*, 128 Md. 535; 4 *Ruling Case Law*, sec. 22; *Maryland Trust Co.* v. *Mechanics Bk.*, 102 Md. 608; *Burke* v. *Smith*, 111 Md. 624; *Trent Import Co.* v. *Wheelwright*, 118 Md. 258; *Congress & Empire Spring Co.* v. *Knowlton*, 103 U. S. 49.

For the reasons stated, we think the court below was right in dismissing the appellant's petition, and we will, therefore, affirm the decree.

*Decree affirmed, costs to be paid by the appellant*